CASTOR, JUAN, RICARDA y JOSEFINA SANTANA Y PEREIRA y DELFÍN, AURORA, GLORIA, NICOLÁS, ZOILO Y SILVANO SANTANA y RAFAEL, HERIBERTO, AMELIO, ERNESTINA y MANUEL DÍAZ SANTANA, demandantes y apelantes, v. PEDRO ORCASITAS MUÑOZ, demandado y apelado.

No. 6269.—*Sometido:* Junio 6, 1934. *Resuelto:* Diciembre 10, 1934.

* NOTA: Véase el prefacio.

736

*Ángel A. Vázquez,* abogado de los apelantes; *R. H. Blondet,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Los demandantes son los herederos de Ricarda Pereira. Reclaman del demandado Pedro Orcasitas Muñoz diez mil

seiscientos dólares basándose, en resumen, en los siguientes hechos:

En el momento de su muerte—noviembre, 1918—Ricarda Pereira era dueña de una finca rústica de treinta y tres cuerdas situada en el barrio de Hato Nuevo del término municipal de Gurabo, que tenía hipotecada a favor del demandado Pedro Orcasitas Muñoz para responder de cuatrocientos dólares, intereses y ciento cincuenta dólares más para costas en caso de reclamación judicial.

Vencida la deuda garantizada con la hipoteca, el demandado Orcasitas inició para cobrarla un procedimiento ejecutivo sumarísimo en la Corte de Distrito de Humacao el 19 de mayo de 1919, o sea, cuando ya Ricarda Pereira había fallecido. Se exponen los hechos básicos y se concluye que el procedimiento, que culminó en la adjudicación de la finca hipotecada al acreedor ejecutante, es nulo:

"A.—Porque dicho procedimiento sumarísimo se instituyó el 19 de mayo de 1919 contra un muerto, o sea contra Ricarda Pereira;

"B.—Porque el auto de requerimiento de pago no contiene el apercibimiento estatutario de lo que habría de ocurrirle a la parte deudora en caso de que no pagara las cantidades reclamadas, dentro del término de 30 días;

"C.—Porque los herederos, componentes de la sucesión de la fallecida Ricarda Pereira, dueños el 19 de mayo de 1919, que son los demandantes relacionados en el hecho 1 de esta demanda, no fueron requeridos de pago, no obstante lo cual su finca les fué vendida en pública subasta sin habérseles oído ni dado oportunidad de defensa alguna;

"D.—Porque en la sentencia de remate se incluyeron $76.00 por intereses desde 19 de octubre de 1917 hasta el 19 de mayo de 1919, cantidad que no era debida por los herederos de la fallecida Ricarda Pereira, porque la hipoteca sólo devengaba intereses durante el término del contrato o sea hasta el 19 de octubre de 1918;

"E.—Porque siendo, como es, dicho procedimiento sumarísimo hipotecario un asunto ex-parte, de la naturaleza de los de jurisdicción voluntaria, y habiéndose, como fué, tramitado como tal, el allí ejecutante y ahora demandado Pedro Orcasitas Muñoz no adhirió a la Resolución final de dicho asunto, ni fué, ni se ha cancelado por

el Secretario de dicha Hon. Corte, el sello de rentas internas que determina la ley;

"F.—Porque el mandamiento de requerimiento de pago, librado por el Secretario de dicha Hon. Corte el 21 de mayo de 1919, en cumplimiento de dicha resolución final es nulo por ser la consecuencia de un auto de requerimiento de pago nulo también;

"G.—Porque la sentencia de remate fué asimismo la consecuencia de un auto de requerimiento de pago nulo y, además, porque en dicha sentencia se ordenó el cobro de $76.00 de intereses no debidos por los herederos de la fallecida Ricarda Pereira y el cobro también de $150.00 para gastos, costas y honorarios de abogado que se había asignado en la escritura de hipoteca como máximo para esa atención pero que no era debida por los citados herederos de la aludida causante al ejecutante señor Orcasitas y que estaba sujeta a liquidación por esos conceptos, y esas costas no fueron liquidadas ni aprobadas, por no haberse radicado el correspondiente memorándum ante la Hon. Corte de Distrito de Humacao;

"H.—Porque el mandamiento de ejecución de sentencia fué el producto de un auto de requerimiento de pago nulo, así como de un requerimiento de pago nulo y de una sentencia de remate nula también."

Se alega además en la demanda que el demandado Orcasitas vendió la finca que se le adjudicara a Juan Solá quien a su vez la vendió a Pedro Crespo por $2,400, y que como la finca constaba inscrita en el Registro y como de éste no surgía vicio alguno que invalidara dichos contratos, la finca se había perdido para los demandantes a quienes quedaba solamente su acción personal contra el demandado que es la que ejercitan en este pleito.

Los daños y perjuicios que se reclaman se fijan en el hecho noveno de la demanda como sigue:

"En el momento en que la finca antes descrita fué vendida, por adjudicación en pago, por el márshal de la Corte de Distrito de Humacao al ejecutante y ahora demandado Pedro Orcasitas Muñoz ó sea el 11 de agosto de 1919, dicha finca tenía en su totalidad un valor mínimo de $4,600 ó sean $200 por cuerda; y en los doce años transcurridos desde el 11 de agosto de 1919 al 11 de agosto de 1931 en que los herederos de la fallecida causante Ricarda Pereira han estado privados de la posesión material y usufructo de

dicha finca, dichos herederos, que son los demandantes, han dejado de percibir la suma de $6,000.00 ó sea $500.00 por año, importe de los productos de caña y otros frutos que ha rendido dicha finca.''

La demanda que está jurada termina suplicando que se dicte sentencia declarando nulo el procedimiento ejecutivo sumarísimo, condenando al demandado a pagar a los demandantes $10,600 con sus intereses en concepto de daños y perjuicios e imponiendo el pago de las costas al demandado.

El demandado pidió la eliminación de ciertos particulares de la demanda. No tuvo éxito y formuló entonces su contestación, adoptando en su redacción el siguiente método: La demanda contiene diez hechos. Igual número contiene la contestación. Cada hecho numerado de la contestación comienza así: ''Niega general y específicamente, por falta de información y creencia, que'' y entonces sigue exactamente lo alegado en el hecho correspondiente de la demanda. Como transcribimos íntegro el hecho noveno de la demanda, transcribiremos íntegro también el hecho noveno de la contestación y así se tendrá una idea más clara del método seguido. Dice:

''Niega general y específicamente por falta de información y creencia, que en el momento en que la finca descrita fué vendida, por adjudicación en pago, por el márshal de la Corte de Distrito de Humacao al ejecutante y ahora demandado Pedro Orcasitas Muñoz, o sea el 11 de agosto de 1919, dicha finca tuviera en su totalidad un valor mínimo de $4,600.00, o sea $200.00 por cuerda; y que en los doce años transcurridos desde el 11 de agosto de 1919 al 11 de agosto de 1931 en que los herederos de la fallecida causante Ricarda Pereira han estado privados de la posesión material y usufructo de dicha finca, dichos herederos, que son los demandantes, hayan dejado de percibir la suma de $6,000.00, o sea $500.00 por año, importe de los productos de caña y otros frutos que ha rendido la finca.''

La contestación termina con las siguientes defensas especiales:

''PRIMERA.—Que la demanda en este caso no aduce hechos suficientes para determinar una causa de acción. (Inciso 6 art. 105 del Código Enj. Civil.)

"Segunda.—Que la sociedad de gananciales constituída por Pedro Orcasitas Muñoz y la que fué su esposa, Ángela Ubarri, fué dueña de la hipoteca a que se contrae la nulidad del ejecutivo en este caso, habiendo fenecido doña Ángela Ubarri, el día_____de _____de 19____, sucediéndole en todos sus derechos hereditarios, sus hijos Jorge, Luis, Pedro, Concepción, Ángela, Mercedes, María-Teresa, Edith y Rafaelina Orcasitas; y su esposo Pedro Orcasitas Muñoz.

"Que para el caso de que la demanda en este pleito sea declarada con lugar, alega el demandado Pedro Orcasitas que la sociedad de gananciales constituída por su esposa Angela Ubarri era dueña y él adquirió por liquidación de dicha sociedad, la mitad del producto del préstamo liquidado según el hecho sexto de la demanda, de $646.00, con más la cantidad que le fué asignada y que le corresponde de acuerdo con la Ley y el usufructo proveniente de la herencia de su legítima esposa fallecida, antes mencionada, con más los intereses al tipo estipulado sobre la mitad del importe de dicho préstamo, desde la fecha en que fueron liquidados hasta el día en que se efectúa la liquidación de la sentencia que pudiera recaer en este caso, los gastos de conservación del inmueble, y las contribuciones satisfechas al erario público, hasta el día en que dicha finca fué traspasada por la sociedad de gananciales constituída por el demandado y la que fué su legítima esposa, a los adquirentes subsiguientes.

"Que caso de decretarse la nulidad del procedimiento en este pleito, procedería la compensación de las sumas mencionadas en el hecho anterior, que al efecto serían líquidas, exigibles y vencidas, y los demandantes serían en deberlas al demandado."

Pidieron los demandantes la eliminación de varios pasajes de la contestación. También que se dictara sentencia sobre las alegaciones. No accedió la corte. Fué el pleito a juicio, pronunciándose la sentencia recurrida que declara la demanda sin lugar sin especial condenación de costas.

En su alegato señalan los apelantes cuatro errores cometidos a su juicio por la corte de distrito al denegar la eliminación de ciertos pasajes de la contestación, al no dictar sentencia a su favor por el mérito de las alegaciones, al desestimar la demanda por el fundamento de no haberse hecho partes en el pleito a los herederos de la fallecida esposa del

demandado y al desestimar la demanda por el fundamento de que los demandantes no presentaron evidencia del valor razonable de la finca y de sus frutos.

Antes de comenzar la discusión de los errores señalados, parece conveniente decir que no hay cuestión sobre la nulidad del procedimiento ejecutivo sumarísimo. En su relación del caso y opinión la corte sentenciadora concluyó que dicho procedimiento era nulo si no por todos los fundamentos alegados, por algunos de ellos. Y la propia parte demandada y apelada dice textualmente en su alegato:

"A los efectos de la discusión, reconocemos la nulidad de las diligencias ejecutivas en cobro de hipoteca, según así hizo el juez sentenciador."

■ Examinemos el primer error. Conocemos las tituladas defensas especiales alegadas en la contestación. Los demandantes pidieron a la corte que la eliminara y ahora sostienen que erró al dictar una resolución contraria.

No estamos conformes. Aunque en forma imperfecta, se alegó en la contestación la falta de partes demandadas y ello está autorizado por el artículo 108 del Código de Enjuiciamiento Civil que expresamente dispone que "cuando ninguno de los extremos enumerados en el artículo 105, constare en la demanda, la impugnación podrá hacerse en la contestación." La cuestión no pudo suscitarse por excepción previa porque de la faz de la demanda no surgía la existencia de los herederos de la esposa.

■ Además, aunque también en forma confusa e imperfecta, se alega en las defensas la compensación que, de acuerdo con lo que hemos decidido repetidas veces, procede en casos de esta naturaleza.

■ Argumentando su segundo señalamiento de error, sostiene la parte apelante, con razón a nuestro juicio, que la contestación presenta un caso típico de "negative pregnant" y por tanto que debiendo considerarse admitida la certeza de los hechos alegados en la demanda debió dictarse una sen-

tencia sobre las alegaciones en su favor. Invoca el caso de *Somonte* v. *Mimoso*, 27 D.P.R. 398, en el que esta corte decidió, copiando del resumen, que:

"Cuando el demandado niega en la contestación los hechos esenciales de la demanda en forma tal que la negativa envuelve una afirmación (*negative pregnant*) procede dictar sentencia sobre las alegaciones."

Condensando la jurisprudencia sobre el particular, dice Corpus Juris:

"Un *negative pregnant* es aquella forma de expresión negativa que puede envolver una afirmativa, o por lo menos una inferencia de índole favorable a la parte contraria. Un *negative pregnant* puede surgir de una negativa demasiado literal de las alegaciones contenidas en la declaración o demanda o de una negativa demasiado amplia que plantea una controversia más allá de la cuestión envuelta.

"De ordinario un *negative pregnant* no plantea una controversia pertinente y las consecuencias son idénticas a cuando por cualquiera otra razón una contestación admite las alegaciones de la parte demandante sin negarlas o evadirlas. No se resolverá favorablemente una objeción a un *negative pregnant* cuando la misma no es presentada antes del juicio, especialmente si no se desprende que el demandante ha sido inducido a error; y cuando aparece claramente de otra parte de la contestación que las alegaciones formalmente admitidas en el *negative pregnant* son realmente negadas, se considerará que la contestación es buena; y esto es especialmente cierto cuando el hecho es negado expresamente en otra parte de la contestación." 49 C. J. 269, 270.

Aquí la cuestión fué suscitada desde el comienzo del pleito y la propia corte de distrito admitió finalmente al tratar la cuestión de daños y perjuicios en su relación del caso y opinión, que por la forma en que se niega el hecho noveno de la demanda, quedó admitido. Y la forma seguida para negar todos los otros hechos de la demanda es la misma que la usada para negar el noveno, como explicamos anteriormente.

Se trata, en verdad, de una negación conjuntiva *in ipsis verbis*, que ha sido considerada por la Corte Suprema de

Colorado en *City of Boulder* v. *Plains Loan, Realty & Investment Co.*, 224 Pac. 233, 234, como "negative pregnant" equivalente a una admisión.

" 'La ley no admite alegaciones dobles,' dijo Lord Hobart, en el caso de *Slade* v. *Drake,* Hob. 295, 'ni los *negative pregnants,* aunque sean ciertos, porque tergiversan y no ayudan a la sentencia que pueda dictarse en el caso,' " citado por la Corte de Circuito de Apelaciones del Sexto Circuito por medio del Juez Lurton en *United States* v. *Larkin,* 153 Fed. 113, 115.

No debe perderse de vista que en este caso se trata de la contestación a una demanda jurada que exige de acuerdo con la expresa disposición de la ley (art. 110 del Código de Enjuiciamiento Civil) que la negación de cada alegación impugnada sea específica y se haga por afirmación absoluta o según información y creencia, pudiendo el demandado si no tuviere suficiente información o creencia respecto del asunto, manifestarlo así y formular de ese modo su contestación.

La razón de la regla fué expuesta en un antiguo caso de California—*Doll* v. *Good,* 38 Cal. 290, citado en *Bartlett Estate Co.* v. *Fraser et al.,* 105 Pac. 130, como sigue:

"Las reglas de procedimiento tienen por mira evitar evasivas y exigir que se niegue en substancia y en espíritu toda alegación específica contenida en una demanda jurada, y no meramente que se niegue su verdad literal."

Ahora bien, como la contestación contenía además las defensas que conocemos, hizo bien la corte de distrito al negarse a dictar la sentencia solicitada. *Berríos* v. *Garáu,* 46 D.P.R. 799, 801.

Para resolver debidamente el tercer señalamiento, o sea, aquél por virtud del cual se sostiene que la corte erró al desestimar la demanda por el fundamento de no haberse hecho partes en el pleito a los herederos de la fallecida esposa del demandado, es necesario comenzar fijando bien la naturaleza de la acción ejercitada en el presente pleito.

Se pide que cierto procedimiento judicial por virtud del cual una finca perteneciente a los demandantes pasó indebida o ilegalmente al poder del demandado, sea declarado nulo y se alega expresamente que como la finca se encuentra actualmente en poder de tercero se condene al demandado a pagar a los demandantes en concepto de daños y perjuicios el valor de la finca y el de sus productos, a partir del despojo.

Siendo ello así, bien puede sostenerse que es la acción que autoriza el artículo 175 del Reglamento para la Ejecución de la Ley Hipotecaria en los siguientes términos:

"Todas las demás reclamaciones que puedan formular, así el deudor como los terceros poseedores y los demás interesados, incluso las que versaren sobre nulidad del título o de las actuaciones, o sobre vencimiento, certeza, extinción o cuantía de la deuda, se ventilarán en el juicio plenario que corresponda, sin producir nunca el efecto de suspender ni entorpecer el procedimiento ejecutivo."

Y en cierto modo el artículo 38 de la propia Ley Hipotecaria cuando dispone que:

"En todo caso en que la acción resolutoria o rescisoria no se pueda dirigir contra el tercero, conforme a lo dispuesto en este artículo, se podrá ejercitar la personal correspondiente para la indemnización de daños y perjuicios por el que los hubiere causado."

¿Contra quién debe ejercitarse? Sin duda alguna contra el causante de los perjuicios reclamados.

Los apelantes sostienen que el causante lo fué únicamente el demandado. Éste, que la sociedad de gananciales a favor de la cual estaba constituída la hipoteca, a nombre de la cual se inició el procedimiento actuando el marido como su administrador, para la cual se adquirió la finca y a beneficio de la cual se vendió. Y habiendo quedado disuelta dicha sociedad por muerte de la esposa, sigue sosteniendo el marido que la responsabilidad que a ella hubiera correspondido pesa hoy sobre sus herederos en la proporción de sus respectivos haberes hereditarios.

El procedimiento hipotecario se inició por el demandado

a su solo nombre, pero a virtud de la prueba practicada se concluye que el crédito garantizado con la hipoteca era un bien ganancial, que la finca adjudicada al marido también lo era y que fué vendida en vida de su esposa.

Si en vida de ésta este mismo pleito hubiese sido iniciado, pudo serlo contra el marido solamente, pero si se le hubiera condenado a pagar alguna indemnización, el pago hubiese corrido a cargo de la sociedad conyugal. Esto es evidente.

¿Qué cambio introduce en esa clara relación jurídica la muerte de uno de los socios?

La sociedad de gananciales está expresamente regulada por la ley. Una de las causas de su disolución lo es la muerte de uno de los cónyuges. Disuelta, debe liquidarse. La ley fija las reglas para ello. Se formula el inventario. Pagadas las deudas y las cargas y obligaciones de la sociedad, se liquidarán y pagarán el caudal del marido y el de la mujer hasta donde alcance el caudal inventariado. Lo que quede es lo que constituye el haber de la sociedad, haber que se dividirá por mitad entre el cónyuge sobreviviente y los herederos del otro o entre los herederos de ambos.

Nada dispone expresamente la ley sobre quién debe responder de las ulteriores obligaciones cuyo cumplimiento pueda reclamarse después de la disolución y que no se tuvieron presentes al liquidarla.

En los Comentarios de Manresa sólo hemos encontrado esta manifestación: "Pagado el capital de la mujer y antes de reintegrar el suyo al marido, ordena la ley que se paguen las deudas, cargas y obligaciones de la sociedad. Estas cargas se especifican en los artículos 1408 al 1411. *Claro es que se trata de las que se hallen pendientes de cumplimiento al terminar la sociedad de gananciales.*" 9 Manresa, Comentarios al Código Civil 602, 4ª. Ed. Nada dice con respecto a las obligaciones que puedan surgir después.

Como el código dispone que la sociedad de gananciales se regirá por las reglas del contrato de sociedad en todo aquello en que no se oponga a las expresamente fijadas para el mismo,

hemos examinado dichas reglas y nada tampoco encontramos expresamente previsto en ellas sobre el particular.

¿Se extingue la obligación con la sociedad? ¿Son sólo responsables el cónyuge sobreviviente y los herederos del fallecido o los herederos de ambos de las obligaciones pendientes y de las acciones iniciadas al tiempo de la liquidación? Una respuesta afirmativa para todos los casos no estaría a nuestro juicio conforme con el concepto fundamental de la justicia. Creemos que la cuestión debe resolverse aplicando los preceptos del código sobre la herencia.

Sucesión es la transmisión de los derechos y obligaciones del difunto a sus herederos, incluyendo no solamente los que existan al tiempo de su muerte si que también los bienes que correspondan a la sucesión después de abierta y las cargas y obligaciones que les fueren inherentes. La herencia comprende todos los bienes, derechos y obligaciones de una persona que no se extingan por su muerte. Artículos 599, 601 y 608 del Código Civil, Edición de 1930.

Si los hechos ocurrieron vigente la sociedad y si la sociedad era la responsable de las consecuencias de los mismos, parece lo lógico que al exigirse la responsabilidad después de disuelta la sociedad, la acción se dirija contra los sucesores de la misma, que lo son en este caso el cónyuge sobreviviente y los herederos del fallecido en la proporción de sus respectivas acreencias hereditarias.

No nos hemos detenido a considerar si se trata o no de una obligación que se extingue con la muerte porque su subsistencia nos parece clara.

Comentando Manresa el artículo 659 del Código Civil, igual al 608 del nuestro, Edición de 1930, dice, en parte, lo que sigue:

"En estas responsabilidades están comprendidas, no sólo las que el causante de la herencia hubiere contraído por convenio, sino también las que nacen de culpa o negligencia del mismo, siempre que no se extingan por su muerte, pasando al heredero la obligación de satisfacerlas. La acción de despojo, por ejemplo, ejercitada por me-

dio del interdicto de recobrar, se da contra los herederos del despojante, siempre que no haya prescrito, no sólo para el efecto de la restitución de la cosa, sino también para el pago de costas, daños y perjuicios y devolución de frutos, a que éste debe ser condenado conforme a la ley.'' 5 Manresa, Comentarios al Código Civil, pág. 301, 4ª edición.

Creemos, pues, que estuvo acertada la corte de distrito al considerar que el demandado en este caso no es el solo responsable de la obligación cuyo cumplimiento se exige, siéndolo también sus hijos Jorge, Luis, Pedro, Concepción, Angela, Mercedes, María-Teresa, Edith y Rafaelina Orcasitas y Ubarri.

Ahora bien, la corte de distrito concluyó además en su relación del caso y opinión que ''la exclusión como demandada de dicha sucesión constituye un defecto que impediría dictar sentencia contra Pedro Orcasitas Muñoz'' y en eso no estamos conformes.

Es cierto que advertida por el demandado, la parte demandante pudo pedir que se trajeran al pleito los herederos que faltaban y que aun la misma corte actuando por su propio acuerdo pudo haberlo ordenado en ejercicio de la facultad que le reconoce el artículo 74 del Código de Enjuiciamiento Civil y debió haberlo hecho si es que entendía que sin ellos no se podía llegar a una completa resolución de la controversia. Pero creemos que a pesar de no haberse procedido así pudo el pleito continuar contra el demandado, limitando desde luego su responsabilidad a la que como sucesor de la sociedad de gananciales le corresponde.

El que el demandado se hubiera comprometido en el escrito inicial del procedimiento hipotecario sumarísimo a indemnizar a la deudora de cuantos daños y perjuicios pudieran irrogársele por malicia o negligencia en la fiel exposición de los hechos del caso y circunstancias que habría de apreciar la corte para autorizar y continuar el procedimiento, no varía la naturaleza de la responsabilidad. El demandado hablaba al parecer en su propio nombre, pero actuaba de hecho y de

derecho como administrador que era de la sociedad de gananciales a quien pertenecía el crédito que se trataba de cobrar.

■■ Sólo resta examinar el cuarto de los errores señalados, o sea, el que se refiere a la desestimación de la demanda por falta de prueba de los perjuicios reclamados.

Dice a tal efecto la corte sentenciadora en su relación del caso y opinión:

"(C).—En cuanto se refiere a la indemnización de daños y perjuicios, en la demanda se alega meramente que en el momento en que la finca fué vendida por adjudicación en pago al ejecutante y ahora demandado Pedro Orcasitas Muñoz, dicha finca 'tenía en su totalidad un valor mínimo de $4,600.00, o sea $200.00 por cuerda; y que en los 12 meses (años) transcurridos desde el 11 de agosto de 1919 al 11 de agosto de 1931, en que los herederos de la causante Ricarda Pereira han estado privados de la posesión material y usufructo de dicha finca, han dejado de percibir la suma de $6,000.00, o sea $500.00 por año, importe de los productos de caña y otros frutos que ha rendido dicha finca.' Por la forma en que se niega este hecho, párrafo tras párrafo, en la contestación, estimamos que ha quedado admitido. Somonte v. Mimoso, 27 D.P.R. 398. Y los demandantes, fiados en el hecho así alegado, no presentaron evidencia en el momento del juicio. Veve v. Municipio de Fajardo, 43 D.P.R. 845. ¿Pero podría la Corte conceder las indemnizaciones solicitadas tomando como única base el hecho en esa forma admitido?

"Lo que un demandado debe pagar como indemnización por una finca que adquirió ilegalmente y que no puede devolver por hallarse en poder de una tercera persona, no es el valor mínimo que en su totalidad tuviera al tiempo de la venta, siendo esto una conclusión, sino el valor razonable que la misma tenía en el mercado cuando el dueño fué privado de ella; y cuando se reclaman frutos no basta alegar que se rindieron y dejaron de percibir por determinada suma, sino que es necesario alegar, y también probar el valor que tenían dichos frutos en el mercado cuando se produjeron y los gastos hechos para producirlos, pues de otro modo no existiría base para determinar los beneficios. Arvelo v. Banco Territorial y Agrícola, 29 D.P.R. 1066."

Como se ve, la corte decide que la alegación novena de la demanda quedó admitida y que.siendo ello así los deman-

dantes no tenían que presentar evidencia sobre ella, pero examinándola en sí misma concluye que no expresa hechos suficientes en que basar la condena que se solicita.

A nuestro juicio la alegación es bastante en cuanto al precio de la finca y no lo es en cuanto a la reclamación de frutos.

Lo que debe reintegrarse es el valor razonable del inmueble cuando éste no puede devolverse, pero creemos que las palabras "valor mínimo" expresan suficientemente esa idea. Y aunque tal vez el valor fijado es excesivo, como fué aceptado es necesario admitirlo.

En cuanto a los frutos es el producto líquido, el beneficio realmente obtenido a virtud de ellos lo que puede reclamarse y debe reintegrarse, y tal como está la alegación redactada parece que lo que se reclama es el producto bruto. Por lo menos la cuestión es dudosa y en la duda y atendidas todas las circunstancias concurrentes, creemos que debe sostenerse la conclusión de la corte de distrito sobre el particular.

Procediendo el reintegro de algo, surge la necesidad de considerar la cuestión de compensación.

Fué alegada en la forma que conocemos pero el demandado no presentó evidencia alguna específica sobre ella. En tal virtud sólo podrá tomarse como base la deuda en sí misma y sus intereses, desde luego que también en la parte correspondiente al demandado, o sea en la mitad.

*Por virtud de todo lo expuesto, debe revocarse la sentencia recurrida dictándose otra ordenando al demandado que pague a los demandantes $2,300, mitad del precio de la finca ejecutada, y a los demandantes que paguen al demandado $200, mitad del crédito garantizado con la hipoteca, con sus intereses a partir del 19 de mayo de 1919 hasta la fecha en que el pago se efectúe, pudiendo el demandado descontar lo que le deben satisfacer los demandantes de lo que debe él satisfacerles, entendiéndose cumplida la sentencia mediante el pago del saldo que resulte. Cada parte deberá pagar sus propias*

*costas atendidas todas las circunstancias que en el caso concurren.*

El Juez Asociado Señor Wolf está conforme con el resultado.

El Juez Asociado Señor Hutchison disiente, por entender que debe condenarse al demandado a pagar a los demandantes el total del precio de la finca ejecutada.