CARMEN MORALES VDA. DE ROVIRA, por sí y en representación de sus menores hijos CARMEN PURA y DARÍO ROVIRA Y MORALES, y ADOLFO MORALES en representación de sus menores hijos MARÍA IRMA, ADOLFO, ENRIQUE y ALFREDO MORALES ROVIRA, demandantes y apelados, *v.* DOLORES CABRERA VDA. DE SALAZAR, demandada y apelante.

Núm. 7107.—*Sometido:* Marzo 19, 1937. *Resuelto:* Abril 21, 1938.

*Carlos J. Torres* y *Joaquín Vendrell,* abogados de la apelante; *Celestino Benítez Morales,* abogado de los apelados.

El Juez Asociado Señor Wolf emitió la opinión del tribunal.

Darío Rovira Cordovés falleció ab intestato en 15 de abril de 1929. Como resultado de un procedimiento para determinar la identidad de sus herederos legales, las siguientes personas fueron declaradas como tales: María Marina, Alejandrina y Pedro Rovira Ríos, como hijos legítimos del primer matrimonio del finado; Providencia Rovira López, como única hija del segundo matrimonio; y los menores Carmen Pura y Darío Rovira Morales, habidos en el tercer matrimonio, en unión a su madre Carmen Morales.

Allá para el mes de octubre de 1924, Darío Rovira Cordovés tomó a préstamo $6,000 a Pedro Salazar Schuck, y para garantizar su pago otorgó una hipoteca sobre determinada finca por el término de cuatro años. Salazar falleció en 1927 y en pago parcial de su interés en la herencia, su viuda, Dolores Cabrera, recibió el título del crédito hipotecario arriba mencionado. En 30 de noviembre de 1930 ella entabló un pleito ordinario en ejecución de hipoteca, en el cual, por lo que hemos podido averiguar de los autos elevados, tan sólo María Marina, Alejandrina y Pedro Rovira Ríos; Carmen Morales viuda de Rovira Cordovés y sus menores hijos Carmen Pura y Darío Rovira Morales, fueron designados como partes demandadas. Se alegó en dicho pleito que los demandados arriba mencionados habían aceptado la herencia y se hallaban en posesión de la finca.

Aunque no parece haberse suscitado la cuestión, Providencia Rovira López, que era la única hija del finado en su segundo matrimonio, no aparece como parte demandada en el procedimiento anterior. Sin embargo, pasaremos sobre esta cuestión sin hacer ningún comentario ulterior.

La corte inferior, luego de declarar sin lugar una excepción previa interpuesta por los tres hijos mayores, dictó sentencia en rebeldía contra los demandados antes mencionados por la suma de $6,000, más intereses y costas. Se expidió y diligenció mandamiento de ejecución contra la finca hipotecada y la misma fué vendida y adjudicada al acreedor por $6,000.

Con el propósito de anular el procedimiento ejecutivo arriba mencionado, los menores Carmen Pura y Darío Rovira Morales, representados por su madre, entablaron la correspondiente demanda. Originalmente se adujeron tres causas de acción, pero durante el juicio tan sólo se insistió en la primera de ellas. Las otras dos fueron abandonadas. La causa de acción subsistente, que sólo solicitaba la nulidad del procedimiento, se basaba fundamentalmente en (a) el haberse dejado de notificar, conforme exige la ley, personalmente a los menores con copia de la demanda o emplazamiento, y (b) el haberse dejado de notificar a esos mismos menores de la sentencia dictada.

La apelante radicó una contrademanda alegando que a los demandantes debía, como condición previa a la entrega de su participación en la finca, exigírseles el pago de la sexta parte del principal y sus intereses. Cada uno de ellos, de acuerdo con el alegato de la apelante, había heredado una participación indivisa equivalente a 1/12 de la finca. La corte inferior anuló el procedimiento en su totalidad y ordenó la cancelación en el registro de la propiedad de la adjudicación hecha al acreedor hipotecario.

Abandonando toda otra defensa, la apelante ha optado por descansar exclusivamente en los siguientes errores.

Ella sostiene que la corte erró:

"*Primero:* En no haber declarado con lugar la excepción previa á la demanda, o sea no estimar que no compete a los demandantes la acción de nulidad de la sentencia y de la adjudicación de finca, y no declarar que su derecho está limitado a la parte de la sentencia que afecta a los demandantes y al condominio de ellos en la finca, correspondiéndoles la acción de división de comunidad.

"*Segundo:* Al declarar nulos en su totalidad los procedimientos judiciales, sin solicitud de algunas de las personas que fueron partes en los mismos, se emplazaron para contestar la demanda y se notificaron de la sentencia y sin darles oportunidad para ser oídos.

"*Tercero:* Al condenar al pago de las costas a la parte demandada."

Asumiremos, con la apelante, que los menores demandantes nunca fueron legalmente notificados con copia del emplazamiento o de la demanda en el pleito ordinario en ejecución de hipoteca (civil número 13,485 de la Corte de Distrito de San Juan) y por tanto que la corte inferior nunca tuvo jurisdicción personal sobre ellos en dicho procedimiento. Empero, pasaremos por alto, para los fines de este recurso, las personas que, por primera vez y sin explicación alguna, son incluídas como partes demandantes en la copia del "pliego de excepciones y exposición del caso enmendada" que figura en la transcripción de autos. En ninguna otra parte de la transcripción nos ha sido posible hallar referencia específica a ellas, excepción hecha de que sus nombres aparecen de ahí en adelante en el título del caso. Con estos precedentes procederemos a resolver los errores señalados.

La apelante en su alegato hace constar los hechos y las cuestiones que están ante nos en la siguiente forma:

"La situación de hechos, señores magistrados, es por consiguiente la siguiente: el juicio plenario en cobro de crédito hipotecario no se siguió contra todos los condueños de la finca y sí contra algunos, entre ellos mayores y menores de edad, y solamente los mayores de edad fueron emplazados para contestar la demanda y notificados de la sentencia.

"Los demandantes sostienen que a virtud de no haber estado integrada en el juicio y constituída en demandada la comunidad deudora hipotecaria o sucesión de Darío Rovira Cordovés, la sentencia que se dictó condenando al pago del crédito hipotecario y ordenando la venta del inmueble, es nula en su totalidad. La parte demandada sostiene que esa nulidad no afecta a los condominios de las personas que fueron constituídas en demandados, se emplazaron para contestar la demanda y fueron notificados de la sentencia. El tribunal de distrito se decidió por la contención de la parte demandante."

La apelante cita los casos de *Santana* v. *Orcasitas*, 47 D.P.R. 735, y *Ruiz et al.* v. *G. Llinás & Co.*, 31 D.P.R. 48. Los apelados descansan en el argumento de que la sentencia no era divisible y que en su consecuencia no puede estar comprendida dentro del artículo 190 del Código de Enjuiciamiento Civil que permite se dicte sentencia contra uno o más demandados *"siempre que procediere una sentencia por separado."* Insisten en que todas las personas que componían la sucesión Rovira no fueron hechas partes demandadas y por ende que no podía dictarse sentencia en su contra. Sostienen que el crédito hipotecario era un todo indivisible (*an entirety*) y que se hacía imposible fijar la responsabilidad individual de cada heredero antes de dividirse los bienes de la sociedad de gananciales y de hacerse la partición de la herencia.

La corte inferior basó su sentencia en el caso de *Gaudier* v. *Sucn. García,* 10 D.P.R. 26, o sea, en una decisión anterior.

En *Santana* v. *Orcasitas,* supra, resolvimos que una acción para recobrar los daños y perjuicios provenientes de la nulidad de la ejecución de un crédito hipotecario perteneciente a una sociedad conyugal, podía entablarse con éxito contra el cónyuge supérstite, pero limitando su responsabilidad en proporción a su mitad de gananciales, aunque no se hiciera parte en el litigio a los herederos de la finada esposa.

Los hechos y conclusiones del caso de *Ruiz et al.* v. *G. Llinás & Co.* supra, fueron más o menos como sigue: G. Llinás & Co. radicó originalmente demanda contra Juana Ruiz y sus menores hijos para recobrar $1,299.94 é intereses,

y en ejecución de la sentencia que se dictó en rebeldía adqui-
rió unos inmuebles pertenecientes a los demandados antes
mencionados. Posteriormente los menores instaron demanda
de reivindicación en que trataban de anular el procedimiento
antes mencionado, alegando, entre otras cosas, que nunca ha-
bían sido personalmente notificados del emplazamiento o con
copia de la demanda. Se declaró con lugar una excepción pre-
via de falta de hechos suficientes para determinar una causa
de acción, y los demandantes se negaron a enmendar su de-
manda. Por tanto, fué de una sentencia adversa sobre las
alegaciones que ellos entablaron el correspondiente recurso de
apelación. Este tribunal, a pesar de que decía en su opinión
que la demanda era insuficiente en ciertos respectos, devolvió
no obstante el caso a la corte de distrito de su origen para
que la misma fuera enmendada por los demandantes. Sin
embargo, el pronunciamiento importante fué que el procedi-
miento original y la subasta posterior fueron sostenidos en
tanto en cuanto afectaban a la madre de los menores, Juana
Ruiz, quien había estado debidamente ante la corte inferior.

Por otra parte, el caso de *Gaudier* v. *Sucn. García,* supra,
en que la corte inferior basó su sentencia de nulidad, fué uno
en que un doctor presentó demanda contra la sucesión de
Diego García Saint Laurent en cobro de honorarios profesio-
nales. Se registró sentencia en rebeldía contra los demanda-
dos y de ella se entabló apelación a nombre de varios meno-
res, basados, entre otras cosas, en que ellos no habían sido
notificados legalmente de los documentos necesarios. Esta
corte resolvió que, como los menores no habían sido notifica-
dos personalmente, la Corte de Distrito de Mayagüez no
había adquirido jurisdicción sobre todas las partes en el liti-
gio y que dicha corte no tenía *control* sobre todos los proce-
dimientos posteriores. En conclusión la opinión dijo: ''Por
las razones expuestas, entendemos que procede la declaración
de nulidad de la sentencia apelada y de todas las actuaciones
anteriores desde el diligenciado de la orden de citación, con
las costas a cargo de la parte apelada.''

La naturaleza del recurso en el caso que está ante nos difiere de la envuelta en cualquiera de los tres casos antes discutidos. Ésta era una acción ordinaria para ejecutar una hipoteca previamente otorgada por el predecesor de los demandados en ejecución. A ese respecto se trataba de una acción *quasi in rem*. Fundamentalmente el objeto del litigio fué cobrar el importe del crédito hipotecario. Con el propósito de lograr tal fin el acreedor garantizado tenía que llevar al deudor ante la corte inferior. Sin embargo, la persona originalmente obligada había muerto y en su consecuencia se hacía necesario proceder contra su sustituto o sustitutos legales. El Código Civil (ed. de 1930), en los artículos 599, 600, 603, 608 y 610, dispone:

"Art. 599. Sucesión es la transmisión de los derechos y obligaciones del difunto a sus herederos.

"Art. 600. La sucesión significa también las propiedades, derechos y cargas que una persona deja después de su muerte, ora la propiedad exceda a las cargas, ora las cargas excedan a la propiedad, o bien si dicha persona ha dejado solamente cargas y ninguna propiedad.

"Art. 603. Los derechos a la sucesión de una persona se transmiten desde el momento de su muerte.

"Art. 608. La herencia comprende todos los bienes, derechos y obligaciones de una persona, que no se extingan por su muerte.

"Art. 610. Los herederos suceden al difunto por el hecho solo de su muerte, en todos sus derechos y obligaciones."

Los apelados insisten en que hasta que se haga la partición de la herencia, ninguno de los herederos tiene responsabilidad individual alguna, pero que, en unión a su madre, representan al finado en lo que a sus derechos y obligaciones respecta.

El verdadero problema que está ante nos es si la sentencia y adjudicación a un acreedor hipotecario en un pleito ordinario en ejecución de hipoteca puede subsistir contra los herederos del deudor finado que fueron demandados, aunque el procedimiento se anule en cuanto a otros herederos que no estaban propiamente ante la corte.

El caso de *Schlarb* v. *Castaing*, 97 P. 289, 50 Wash. 331, fué uno en el cual se hipotecó una propiedad ganancial. Se resolvió que los hijos de los deudores hipotecarios eran partes necesarias en el procedimiento para ejecutar la hipoteca después de la muerte del esposo, si es que se quería afectar su participación en la propiedad, y que la venta de la misma sin unirlos a la acción transfería tan sólo el interés de la viuda, quien fué hecha parte demandada. La decisión tiene importancia en cuanto en ella se sostuvo la sentencia contra la viuda y la venta posterior de su interés en la propiedad. Un razonamiento análogo podría aplicarse al presente caso. Bajo las leyes de Washington, la viuda heredaba la mitad de la propiedad mencionada y la otra mitad correspondía a los hijos por partes iguales, y todos la poseían en común proindiviso. Esto hace que dicho caso sea aún más parecido al nuestro.

El presente recurso, conforme hemos dicho, era uno *quasi-in-rem* y, así pues, su objetivo principal era la venta de la finca hipotecada para pagar la deuda. Véase *Baettenhaussen* v. *Borda,* 52 D.P.R. 540. El gravamen hipotecario pesaba sobre la totalidad de la finca. Hasta que se divida o se haga la partición de la herencia, puede decirse que los herederos suceden en los bienes y derechos del finado en un carácter afín a aquél que existe en una comunidad proindivisa de bienes. Véase Sánchez Román, Derecho Civil, tomo 6 (1) pág. 14 (edición de 1910). No puede haber la ejecución parcial de una hipoteca a menos que la responsabilidad, en lo que al mismo inmueble se refiere, se divida. Éste no es claramente el caso cubierto por el artículo 123 de la Ley Hipotecaria, con respecto a los bienes hipotecados que son posteriormente vendidos en parcelas distintas.

Si uno analiza el litigio instruído ante la corte inferior en ejecución de hipoteca, y la sentencia eventualmente dictada, se hace aparente que tanto el pleito como la sentencia eran indudablemente personales en su naturaleza. La sexta ale-

gación de la demanda en el pleito en ejecución de hipoteca y la súplica de la misma leían:

"Sexto. El deudor, don Darío Rovira, falleció en San Juan, sin otorgar disposición testamentaria, sobreviviéndole su esposa, doña Carmen Morales, y dejando como única descendencia a sus hijos doña Carmen Pura y don Darío Rovira Morales, menores de edad, no emancipados, habidos en su matrimonio con doña Carmen Morales, y los habidos en matrimonio anterior, mayores de edad, doña Alejandrina, don Pedro y doña Marina Rovira, y dicha viuda e hijos han aceptado la herencia del finado señor Rovira, encontrándose en la posesión y disfrute de la finca que hipotecó a don Pedro Salazar y Schuck.

". . . . . . . . . .

"Por lo que a la Hon. Corte suplica se sirva dictar sentencia contra los demandados doña Carmen Morales viuda de Rovira, doña Alejandrina, don Pedro, doña Marina Rovira, don Darío y doña Carmen Pura Rovira y Morales, condenándoles a pagar a la demandante, doña Dolores Cabrera viuda de Salazar, la cantidad de seis mil dólares, sus intereses al nueve por ciento anual desde el primero de mayo de este año y hasta su completo pago y las costas y desembolsos que con esta acción se originen a la demandante, ordenándose que si tal pago no se hiciere, se venda en pública subasta la finca descrita en esta demanda para con su precio en venta verificarlo hasta donde alcance su montante y no siendo suficiente se vendan otros bienes de los mismos demandados, a excepción de los privativos de doña Carmen Morales viuda de Rovira, decretándose que de las propiedades vendidas de esta manera se dé posesión jurídica y material al adjudicatario, lanzándose de ellas a quien las posea en virtud de un derecho derivado de los demandados y de fecha posterior a la iniciación de estos procedimientos."

De la opinión dictada por la corte inferior en este caso tomamos la siguiente aseveración:

"El pleito núm. 13485 se dirige contra los demandados en su carácter personal y no como integrantes de la sucesión de don Darío Rovira."

Bajo estas circunstancias, se desprende que aunque el procedimiento que ahora se ataca fué denominado en ejecución de hipoteca, el mismo iba dirigido contra los demandados per-

sonalmente y la sentencia puede considerarse como dictada en igual sentido. Surge entonces la cuestión: ¿Puede subsistir la sentencia contra aquellos demandados a quienes se dió un pleno día en corte, aunque la misma fracase contra aquéllos que no lo tuvieron? Si se contesta esa pregunta afirmativamente, el problema restante es si la ejecución de esa sentencia sobre la participación indivisa de aquéllos que fueron debidamente notificados puede también subsistir.

La contestación a la primera pregunta tal vez pueda hallarse en la naturaleza de la obligación de cada heredero individual del finado, en torno a la deuda hereditaria que está bajo nuestra consideración y en el estudio de la teoría relativa a la indivisibilidad de las sentencias.

Un examen de los varios comentarios al Código Civil y de la jurisprudencia del Tribunal Supremo de España, nos ha dejado la impresión de que los herederos de un deudor finado son solidariamente responsables de las obligaciones hereditarias de su predecesor, y esto es así, aún antes de haberse efectuado la partición de la herencia. Véase Manresa, tercera edición, volumen 7, páginas 767–771, y la jurisprudencia del Tribunal Supremo de España allí citada. Desde luego, si los herederos aceptan la herencia a beneficio de inventario, su responsabilidad final se limita a aquellos bienes que reciban de la herencia, mas su obligación en lo que a esa propiedad se refiere es solidaria. Por tanto, el acreedor del finado puede proceder inmediatamente a tratar de cobrar su crédito de cualquiera de los herederos o de todos ellos. Véase Manresa, edición de 1924, volumen VII, pág. 867. Por tanto, se infiere que pudo dictarse sentencia separada contra cualquiera de los herederos de conformidad con el artículo 190 del Código de Enjuiciamiento Civil.

Habiendo llegado a la anterior conclusión, tenemos que resolver que la sentencia dictada por la corte inferior debe subsistir contra todos aquellos herederos que se hallaban debidamente ante la corte. Aún nos queda la cuestión relativa a si la adjudicación, por así decir, hecha a la señora Salazar,

de sus intereses indivisos respectivos, debe igualmente subsistir. Ha de admitirse que la demandante en el pleito original pudo haber hecho que esas particiones indivisas estuvieran sujetas al pago de la sentencia que obtuviera. ¿Debe el hecho de que la propiedad fué vendida íntegramente, y no parcialmente, militar contra tal adjudicación? La experiencia nos dice, si acaso, que la venta de propiedades urbanas, una casa y un solar—como sucede aquí—es realzada por la subasta de la finca como un solo objeto. La demandada en el presente recurso no se queja de tal venta y está dispuesta, aparentemente, a distribuir el precio de la adjudicación en proporción directa a las participaciones sujetas a la sentencia. Desde este punto de vista, los herederos que ahora atacan el procedimiento no pueden, en forma alguna, ser perjudicados por la adjudicación original. En su consecuencia, somos del criterio que tal adjudicación no debe alterarse en lo que concierne a las participaciones indivisas de los herederos cuyos derechos fueron propiamente adjudicados en el pleito original. .

Conforme hemos dicho, la corte inferior citó el caso de *Gaudier* v. *Sucesión García,* supra. También se basó hasta cierto punto en lo que se dice en la obra "Black on Judgments," segunda edición, volumen I, pág. 313, párr. 211. Distinto al presente, el caso de Gaudier no fué uno de nulidad, sino una apelación interpuesta en el pleito principal mismo, y en ella se suscitó la defensa de falta de jurisdicción sobre algunos herederos menores de edad. Este tribunal aparentemente consideró la sentencia como indivisible y que en apelación no podía ciertamente ser confirmada en cuanto a un demandado y revocada en cuanto a otro, sino que debía ser revocada en su integridad. Véase "Black on Judgments," segunda edición, volumen I, pág. 315. De este mismo autor hemos tomado la siguiente cita:

"En los libros existen numerosas expresiones al efecto de que una sentencia es una integridad, y que si se dicta contra varios demandados, la misma no es susceptible de ser dividida o distribuída con el propósito de eliminar el error o la irregularidad que pueda contener

en cuanto a uno de ellos, y dejarla subsistente en cuanto a los demás. En su consecuencia en un número de estados se ha resuelto que si la sentencia es nula contra un demandado, por no haberse adquirido jurisdicción sobre él, la misma debe considerarse como nula en cuanto a todos los otros demandados, y por ende como nula de toda nulidad. Esta cuestión podría surgir por ejemplo en un caso en que dos personas son designadas como demandados y en que sólo una de ellas es notificada, por ser la otra un no residente o por no ser hallada, y en que luego de oponerse el demandado que ha sido notificado, se dicta sentencia contra ambos. Entonces, de acuerdo con la regla anterior, la sentencia no puede tener más efecto contra el demandado que fué notificado que contra el otro. Por tanto, para llevar la suposición un poco más lejos, si la sentencia sirve de base a un litigio, ya sea en una corte doméstica o extranjera, contra el demandado que fué notificado, éste podría demostrar la irregularidad de los procedimientos con respecto a su codemandado, y eso sería suficiente para impedir que se obtuviera sentencia contra él. El resultado difícilmente parece estar en armonía con la razón y la justicia. Sin embargo, algunas de las decisiones, al discutir sobre la indivisibilidad de la sentencia, se han visto compelidas a sostener precisamente esa posición. Pero existen muchas otras autoridades que sostienen que aunque una sentencia sea nula contra un demandado, por falta de jurisdicción, ella puede no obstante ser válida y obligatoria para los otros, o a lo sumo anulable, mas no nula en su totalidad. Y si se adopta este criterio. es evidente que la sentencia estará sujeta a sus incidencias corrientes, en lo que respecta al demandado sobre quien se adquirió jurisdicción hasta que la misma sea revocada o dejada sin efecto en forma ordinaria. Hasta que llegue ese momento, procede un litigio basado en la sentencia dictada en su contra y a éste no se le permitirá atacarla colateralmente. . . . Cuando investigamos en torno a la forma adecuada en que se ha de determinar una sentencia *solidaria* (*joint*) contra varios demandados que resulte nula en cuanto a uno de ellos, al ser llevada a una corte de apelaciones mediante un recurso de revisión o apelación, hallamos que las autoridades están algo más en armonía. En general, convienen en que la sentencia no puede ser confirmada en cuanto a un demandado y revocada en cuanto a otro, sino que debe ser revocada en su integridad. Y que, por otra parte, si se dicta en favor de los demandados, la nulidad de la sentencia en cuanto a uno la anulará en cuanto a todos ellos. 'La sentencia, siendo solidaria en favor de todos los demandados y errónea en cuanto a uno, tiene que ser re-

vocada en cuanto a todos. Una sentencia dictada solidariamente en favor de varios demandados, ya sea en una acción basada en un contrato o para recobrar daños y perjuicios, no puede ser confirmada en cuanto a uno y revocada en cuanto a otro. Tal sentencia es una integridad y debe subsistir o caer íntegramente.' Empero, la aceptación de esta regla no es tan universal. . . . Antes de terminar la discusión de esta materia es necesario observar que si la sentencia es mancomunada en cuanto a las partes, muy bien podría haber casos en que fuera buena contra una y nula contra otra, y en que una corte de apelaciones podría revocarla en parte y confirmarla en parte. Además, la regla de que una sentencia nula en cuanto a un demandado es nula en cuanto a todos, se considera que es aplicable tan sólo a sentencias en derecho y no a decretos en equidad.

''Del anterior estudio que hemos hecho de las autoridades se desprende claramente que no es posible armonizar los casos sobre esta materia. Mas también se desprenderá que algunas de las cortes que resuelven que una sentencia nula contra un demandado es nula en su integridad, se han ido a los extremos por la concepción altamente técnica de tal sentencia como una integridad imaginaria. El sano juicio legal parece sugerir que si bien tal sentencia es indudablemente errónea y propensa a ser revocada en apelación, sin embargo, que mientras permanezca sin revocar, la misma no debería estar sujeta a ser atacada en un procedimiento colateral por el deudor a cuyo favor no existen irregularidades. También parece estar en armonía con la justicia que sentencias de esta índole no deben ser dejadas sin efecto o anuladas a solicitud de la parte legalmente obligada, porque, es de presumirse, que es únicamente el otro quien ha sido privado de sus derechos o lesionado por una práctica irregular o errónea. En cuanto al primero, la sentencia no debe despojarse de sus consecuencias ordinarias, y no parece haber razón adecuada alguna por la cual la misma no deba constituir una buena causa de acción contra él. Finalmente, se iría demasiado lejos al decirse que la supuesta sentencia sería enteramente nula en cuanto a ambos o en cuanto a todos los demandados. Una sentencia nula es una mera nulidad y no obliga a nadie, y ninguna persona puede adquirir ningunos derechos bajo ella; mientras que en muchos casos (en aquéllos que usan la palabra 'void' para calificar tales sentencias) sostienen que aquél que adquiera basado en tal sentencia será protegido, que los autos pueden ser enmendados, que tal sentencia consolida (merges) la causa de acción, que se puede expedir mandamiento de ejecución contra un

demandado y no contra el otro, y así sucesivamente, ninguna de las cuales consecuencias podría surgir si la sentencia fuera meramente nula e ineficaz.''

La posición favorecida por el autor en la cita anterior fortalece la conclusión a que hemos llegado en este caso.

No tenemos duda alguna de que los procedimientos habidos en la Corte de Distrito de San Juan en el procedimiento hipotecario fueron enteramente nulos en cuanto a los menores Carmen Pura y Darío Rovira Morales, y en su consecuencia que cualquier inscripción o anotación hecha en el registro de la propiedad que menoscabe o les prive del título a su participación indivisa en la finca descrita en la demanda y que fué adjudicada a la apelante, debe ser cancelada. También somos del criterio de que cualquier heredero que no figuró como parte en dicho procedimiento tiene derecho al beneficio de esta decisión si opta por exigirlo.

En lo que respecta a la imposición de costas, toda vez que los menores no tuvieron culpa alguna en este procedimiento, nos inclinamos a sostener la discreción ejercida por la corte inferior, y así lo resolvemos.

*Se dictará sentencia de acuerdo con esta opinión.*