SEBASTIÁN CANET, peticionario y apelado, *v.* CORTE DE DISTRITO DE PONCE, ETC., demandada; BUENAVENTURA RODRÍGUEZ DROZ, ISABEL EPITACIA, MANUEL GUILLERMO y BUENAVENTURA RODRÍGUEZ GRACIA, apelantes.

Núm. 8620.—*Sometido:* Diciembre 7, 1942. *Resuelto:* Diciembre 15, 1942.

*Ramón G. Goyco,* abogado de los apelantes; *E. Tristani, Jr.,* abogado del apelado.

El Juez Presidente Señor del Toro emitió la opinión del tribunal.

Se solicita la desestimación del recurso interpuesto en este caso, por frívolo, alegándose que fué establecido con el único propósito de dilatar la ejecución de la sentencia apelada. Se opuso por escrito la parte apelante, y la vista de la moción fué celebrada el 7 de diciembre en curso sin asistencia de las partes.

La sentencia apelada la dictó el Juez Asociado Sr. Snyder, actuando como juez de turno, en un acaso de *certiorari,* y por ella se anuló la resolución de la Corte de Distrito de Ponce decretando la paralización del pleito sobre ejecución de crédito hipotecario por vía plenaria seguido por Sebastián Canet contra Buenaventura Rodríguez Droz, Isabel Epitacia, Manuel Guillermo y Buenaventura Rodríguez Gracia, mientras estuviese en servicio militar el demandado Manuel Guillermo Rodríguez Gracia y hasta tres meses después de terminado su dicho servicio, y se ordenó la devolución del pleito a la dicha corte para ulteriores procedimientos no inconsistentes con la opinión en que se funda.

Copiada a la letra dicha opinión, es como sigue:

"Se celebró la vista de este recurso mediante un auto de *certiorari* expedido para revisar la actuación de la Corte de Distrito de Ponce al declarar con lugar una moción radicada a nombre de un supuesto militar, para paralizar los procedimientos en el pleito aquí envuelto de acuerdo con el 'Soldiers' and Sailors' Civil Relief Act' de 1940.

"En 5 de febrero de 1928, Rodríguez Droz y dos de sus hijos, Isabel Epitacia y Manuel Guillermo, otorgaron una escritura pública titulada 'Reconocimiento de Crédito y Garantía Hipotecaria', que establecía una cuenta corriente a favor de Rodríguez Droz con la firma de S. Canet & Co., S. en C., garantizada solidariamente por los referidos dos hijos. Para completar su garantía, los referidos dos hijos en este mismo documento hipotecaron cada uno una octava parte que les pertenecía en dos condominios consistentes en seis fincas poseídas en común pro indiviso con otras personas.

"En 12 de diciembre de 1931 Rodríguez Droz y otro de sus hijos, Buenaventura, otorgaron otra escritura pública titulada 'Liquidación

de Cuenta Corriente y Ampliación de Garantía'. En este documento Rodríguez Droz reconoció adeudar a S. Canet (sucesor de la firma de Canet) la cantidad de $2,372.02 por su cuenta corriente. Como en la primera escritura otorgada por los otros dos hijos, este tercer hijo de Rodríguez Droz en esta segunda escritura garantizó solidariamente el pago de la referida cantidad y para asegurar su completo pago igualmente hipotecó su participación de $1/8$ en las propiedades arriba descritas.

"La demanda en este caso, radicada el 10 de septiembre de 1941, alega que en 30 de diciembre de 1939 se liquidó en $1,326.76 la cuenta corriente; que a principios de 1940 se incurrió en una deuda adicional de $321.41; que en 26 de febrero de 1941, las partes convinieron en que dichas dos cantidades, ascendentes a $1,648.16, serían pagaderas con intereses al 8 por ciento empezando el 30 de diciembre de 1939, sobre la primera partida, y en 26 de febrero de 1941, sobre la segunda; que no se ha efectuado pago alguno; y que, de conformidad con las cláusulas de las referidas escrituras que garantizan el pago, también están vencidas y se adeudan al demandante las cantidades de $300 para honorarios de abogado y $100 para gastos. Suplica el demandante que Rodríguez Droz y sus tres hijos sean condenados a pagarle las cantidades ya antes mencionadas, y que con el fin de ejecutar tal sentencia el interés de los demandados en las referidas propiedades sea vendido en subasta.pública. Para asegurar la efectividad de la sentencia el demandante embargó también las referidas propiedades.

"El 4 de febrero de 1942, Manuel Guillermo, por su abogado, radicó una moción .para paralizar los procedimientos en este caso. hasta transcurridos tres meses después de terminarse la guerra. La moción contenía las siguientes alegaciones:

" '1ro. Que es codemandado en esta acción y además, con anterioridad a la radicación de la demanda, adquirió todos los derechos y acciones de los codemandados en los bienes hipotecados, siendo por tanto la única parte interesada realmente en esta ejecución de hipoteca, que es una acción *in rem,* por ser dueño único de los bienes hipotecados.

" '2do. Que ingresó en el ejército de E. U. en servicio activo en octubre de 1940 el compareciente, y que actualmente está en Camp Tortuguero, Vega Baja, Puerto Rico, como Sargento Técnico, de la Banda del 296 de Infantería.

" '3ro. Que de acuerdo con el "Soldiers' and Sailors' Civil Relief Act" de 1940, el compareciente, quien alega en este momento que no

está en condiciones de pagar la hipoteca que se ejecuta y carece de recursos y de medios para hacerlo, solicita que se suspenda esta acción hasta la terminación de la Guerra y tres meses después de la misma, para cuya fecha estará en condiciones el compareciente de hacerle frente a dicha hipoteca.'

"Esta moción fué jurada por el abogado de los demandados debido a que Manuel Guillermo 'se encuentra ausente de este distrito judicial y no puede prestarlo personalmente.'

"En igual fecha, el mismo abogado radicó una contestación a nombre de *todos* los demandados, negando específica y generalmente todas las alegaciones de la demanda. En adición, la contestación establece como una defensa especial que el *22 de septiembre de 1941,* Isabel Epitacia y Buenaventura, habiendo vendido y traspasado, en unión de otros, a Manuel Guillermo todas sus participaciones en las propiedades hipotecadas, nada tenían que ver con este pleito y eran partes indebidamente acumuladas, y que debía paralizarse el pleito en cuanto a Manuel Guillermo, quien estaba en servicio militar activo desde octubre de 1940, hasta transcurridos tres meses después de terminada la guerra, de conformidad con el 'Soldiers' and Sailors' Civil Relief Act' de 1940.

"El 21 de mayo de 1942 la corte de distrito declaró con lugar la moción para paralizar los procedimientos, tal como se solicitó. El 10 de agosto de 1942 la corte de distrito denegó una moción de reconsideración. El 24 de agosto de 1942, el Juez Asociado Sr. de Jesús, actuando como Juez Asociado de Turno de este Tribunal, expidió un auto de certiorari para revisar esta actuación de la corte de distrito, celebrándose la vista ante el infrascrito Juez Asociado de Turno y sometiéndose el caso después de radicarse los alegatos el 8 de septiembre de 1942.

"Parece conveniente determinar como punto de partida la naturaleza de este pleito. Aun cuando pudiera interpretarse que el caso es uno en cobro de una deuda de dinero, la súplica, basada en las alegaciones de la demanda, no solamente es para el cobro de dinero si que también para la venta de la propiedad inmueble que garantiza el pago de la referida deuda. Parece claro, por tanto, que éste es en substancia un pleito para ejecutar una hipoteca o una serie de hipotecas. *García* v. *Registrador de la Propiedad,* 41 D.P.R. 469; *Morales* v. *Cabrera,* 53 D.P.R. 94.

"El 'Soldiers' and Sailors' Civil Relief Act' de 1940 contiene las siguientes disposiciones (50 U.S.C.A., Apéndice, Secciones 521, 532):

" 'Sección 521. *Paralización de los procedimientos cuando su tramitación sea afectada por el servicio militar.* En cualquiera de sus etapas, cualquier acción o procedimiento ante cualquier corte, en el que se halle envuelta una persona que está dentro del servicio militar, bien sea como demandante o como demandado, durante el período de tal servicio o durante sesenta días después, puede, a discreción de la corte ante la cual se halla pendiente, *motu proprio,* y debe, al ser solicitado por dicha persona o por alguna otra a su nombre, ser paralizado según se dispone en esta Ley, *a menos que, en opinión de la corte, la capacidad del demandante de proseguir su acción o la del demandado de conducir su defensa no sea afectada materialmente por razón de su servicio militar.'*

" 'Sección 532. *Hipotecas, escrituras de fideicomiso (trust deeds), etc.* (1) Las disposiciones de esta sección serán aplicables solamente a las obligaciones surgidas con anterioridad a la fecha en que se aprobó esta Ley y garantizadas por hipoteca, escritura de fideicomiso *(trust deed)* o cualquier otra garantía de la naturaleza de una hipoteca sobre propiedad mueble o inmueble poseída por una persona que se halla dentro del servicio militar al comienzo del período de tal servicio militar y todavía poseída por ella.

" ' (2) En cualquier procedimiento iniciado en cualquier corte durante el período del servicio militar para hacer efectiva tal obligación proveniente de la falta de pago de cualquier suma adeudada bajo la misma o de cualquier otra violación de sus términos que ocurra antes o durante el período de tal servicio, la corte puede, después de una vista, a su discreción, *motu proprio,* y debe, excepto como se dispone en la sección 303 (Sección 533 de este Apéndice), al solicitársele por tal persona en servicio militar o por alguna persona a su nombre, *a no ser que en opinión de la corte la capacidad del demandado para cumplir con los términos de la obligación no sea materialmente afectada por razón de su servicio militar—*

" ' (a) paralizar los procedimientos según se dispone en esta Ley; o

" ' (b) ordenar cualquier otra disposición del caso según sea justa y razonable para proteger los intereses de todas las partes.

" '    *   *   *   *   *   *   *   '

(Bastardillas nuestras.)

"El propósito de esta ley es laudable, y la misma debe ser enteramente puesta en vigor de una manera imparcial a favor de aquellos a quienes se aplica. Pero no tiene el amplio efecto que le atribuyen los abogados y la corte de distrito. Ella no pretende disponer la

paralización automática de cualquier procedimiento en que esté envuelto un militar por la mera demostración de que está en servicio militar. El militar debe alegar y *probar* que su capacidad para satisfacer su deuda o para preparar adecuadamente una legítima defensa ha sido afectada materialmente por su servicio militar.

''El demandado alega que no podemos intervenir con el ejercicio de discreción de la corte de distrito al paralizar los procedimientos en este caso. Pero no es ésta una discreción sin límites. Para justificar su acción la corte debe tener ante sí *algunos* hechos. La corte de distrito no oyó testimonio alguno en cuanto a este asunto. Concedió el remedio solicitado basándose únicamente en las alegaciones. La moción para paralizar los procedimientos simplemente alegaba que Manuel Guillermo 'no está en condiciones de pagar la hipoteca que se ejecuta, y carece de recursos y de medios para hacerlo...''. La defensa especial incluída en la contestación ni siquiera hace tal alegación. Alega solamente el servicio militar de Manuel Guillermo, y sobre esta base solicita la paralización de los procedimientos. Además, estas dos alegaciones fueron radicadas y juradas por el abogado de los demandados.

''El propio militar hasta la fecha no ha hecho declaración alguna u *ofrecido prueba alguna* a la corte, según lo exige el estatuto, sobre el hecho de que su 'capacidad...para satisfacer...[su] obligación es...afectada materialmente por motivo de su servicio militar'. En verdad, en la defensa especial de la contestación misma encontramos la alegación de que el 22 de septiembre de 1941, *con posterioridad a la radicación de la demanda en este caso,* Isabel Epitacia, Buenaventura y otros *vendieron* a Manuel Guillermo todas sus participaciones en las propiedades aquí envueltas. Si el militar estaba en aquella fecha en una posición económica lo suficientemente buena para poder comprar propiedad, ciertamente debió exigírsele que demostrara, de acuerdo con los términos del estatuto, que su capacidad para pagar la obligación en este caso fué afectada adversamente por su servicio militar.

''En resumen, es obvio que esta cuestión debe ser determinada, no a base de alegaciones referentes a tal situación, sino a base de prueba ofrecida para sustanciar tales alegaciones. (*Jamaica Sav. Bank* v. *Bryan,* 25 N. Y. S. (2) 17; *Hunt* v. *Jacobson,* 33 N. Y. S. (2) 661; *Cortland Sav. Bank* v. *Ivory,* 27 N. Y. S. (2) 313; vea Anotaciones en 9 A. L. R. 6; 130 A. L. R. 774; 137 A. L. R. 451.) La corte de distrito debió, y así se le exigirá, celebrar una vista en la cual al militar se le dará una oportunidad para aportar tal prueba, si alguna tiene, y desde luego, se le dará una oportunidad al peti-

cionario para refutar esta prueba. Sólo entonces estará la corte de distrito en una posición de poder ejercitar su discreción.

"■■ En vista del hecho de que este caso será devuelto a la corte inferior para ulteriores procedimientos, creemos conveniente examinar dos cuestiones discutidas por la corte de distrito. El peticionario alega que el supuesto traspaso al militar de las participaciones de Isabel Epitacia y Buenaventura en la propiedad en cuestión fué hecho 'con intención de dilatar la debida ejecución' de las hipotecas aquí envueltas 'tomando ventaja' del 'Civil Relief Act,' y que por tanto la referida Ley no podía invocarse para paralizar los procedimientos en este caso, de conformidad con 50 U. S. C. A., Apéndice, Sección 580, que dice como sigue:

" 'Sección 580. *Traspasos con el fin de tomar ventajas de la Ley.* Cuando en cualquier procedimiento para hacer efectivo un derecho civil ante una corte se demuestra a satisfacción de la corte que cualquier participación, propiedad, o contrato, ha sido, a partir de la fecha en que se aprobó esta Ley, traspasado o adquirido con la intención de dilatar la debida ejecución de tal derecho, aprovechándose de las disposiciones de esta Ley, la corte dictará aquella sentencia o aquella resolución que ajustándose a derecho debiera dictarse, no obstante las disposiciones en contrario de esta Ley.'

"La corte de distrito resolvió esta cuestión expresándose así:

" 'No creemos necesario hacer pronunciamiento alguno en cuanto a si la venta de los derechos y acciones hecha por los otros deudores a Manuel Guillermo Rodríguez Gracia 12 días después de radicada la demanda, es o no simulada, o si se hizo con el único propósito de reclamar para los otros deudores, que no son militares, los beneficios de la Soldiers' and Sailors' Civil Relief Act of 1940, puesto que la propia ley prevé el caso de que se conceda a discreción de la corte, dicho beneficio a otras personas que se hallen sujetas a las mismas obligaciones o responsabilidades del militar contra quien se radique procedimiento alguno. (Véase Sec. 103 Soldiers' and Sailors' Civil Relief Act of 1940.)'

"El título 50 de U. S. C. A., Apéndice, Sección 513(1), al cual hizo referencia la corte de distrito como la Sección 103 de la Ley, dispone que siempre que se conceda una paralización de los procedimientos de acuerdo con la Ley, 'tal paralización...puede, a discreción de la corte, de igual manera concederse a los fiadores, garantizadores, endosantes, y otras personas sujetas a la obligación...la... ejecución de la cual se ha paralizado...'. De primera intención

parecería que esta sección se aplica solamente a aquellas personas responsables subsidiariamente en relación con un militar. 'Si bien las personas responsables mancomunadamente (*jointly*) estan incluídas dentro de las palabras "otras sujetas a la...responsabilidad," el principio de *ejusdem generis* parecería indicar que la §103(1) [§513(1)] fué restringida a los endosantes y a aquéllos en la posición de fiadores de un principal que está en servicio militar.' 55 Harv. L. Rev. 304 (Pero véase, *Griswold* v. *Cady*, 27 N. Y. S. (2) 302, *contra*). Si esta interpretación es la correcta, la sección no se aplica a Isabel Epitacia y a Buenaventura, toda vez que ellos no responden subsidiariamente en relación con el soldado. Al contrario, ellos y el soldado son igualmente responsables como cofiadores de la obligación de Rodríguez Droz para con el demandante. Cada uno de ellos, incluyendo el soldado, contrajo una obligación solidaria, y cada uno hipotecó su participación de una octava parte en las propiedades en cuestión con el fin de garantizar su obligación. Como cuestión de hecho, cada uno de ellos pudo haber sido demandado separadamente, bajo su obligación solidaria, por la cantidad total de la deuda. *Morales* v. *Cabrera*, 53 D. P. R. 94, 103.

"Sin embargo, es innecesario que en esta etapa del presente procedimiento contestemos definitivamente la pregunta de si Isabel Epitacia y Buenaventura tienen derecho a invocar la protección de la Sección 513(1). Aun asumiendo que la Sección 513(1) le dió a la corte inferior discreción en un caso adecuado para paralizar los procedimientos en cuanto a los cofiadores de un soldado, los términos de la Sección 580 podrían sin embargo aplicarse a tal caso bajo ciertas circunstancias. Por ejemplo, la corte estaría más inclinada a conceder la paralización cuando se trata de un soldado, en vez de tratarse de otras personas en posición similar. Verdaderamente un soldado podría fácilmente tener razones convincentes para la paralización que no están al alcance de otras personas. Se puede concebir por tanto que aquellas personas interesadas en tal paralización traspasaran su parte a un soldado para robustecer su legalmente posible, pero tenue, esperanza de obtener una paralización por derecho propio bajo la Sección 513(1). Resolvemos por tanto que, prescindiendo del derecho que los cofiadores, como en el presente caso, pudieran haber tenido a que se considerara una petición de paralización bajo la Sección 513(1), es el deber de la corte cuando, como en este caso, hay una alegación al efecto de que la Sección 580 es la aplicable, determinar si *alguna* participación en la propiedad ha sido transferida con el fin de dilatar la ejecución de un derecho

civil ante una corte. Aun si el .traspaso fué por causa, esto no impide que se investigue la *intención* con que se hizo el traspaso.

"En la vista que se celebrará cuando se devuelva el caso, là corte de distrito deberá por lo tanto investigar, y determinar, como una cuestión de *hecho,* la intención con que se hizo el alegado traspaso de las participaciones de Isabel Epitacia y Buenaventura en la propiedad en cuestión. Si llega a la conclusión de que el traspaso se hizo con el fin de tomar ventaja de la Ley y que el soldado participó en tal traspaso a sabiendas, la corte deberá ordenar que se siga el procedimiento de ejecución sin pérdida de tiempo en cuanto a *toda* la propiedad, 'no obstante las disposiciones en contrario de esta Ley.' Ya se les ha advertido a los soldados por medio de la Sección 580 que si se prestan a tales maniobras, cualquier participación que anteriormente ellos tuvieran en tal propiedad, así como la participación traspasada a ellos de esta manera, quedarán fuera del ala protectora de esta Ley.

"En esta vista el soldado se tendrá que enfrentar con dos cuernos de un dilema. Si la prueba es al efecto de que él compró las participaciones de los otros codemandados en la propiedad el 22 de septiembre de 1941, ello tendería a demostrar que su capacidad para cumplir con su obligación en este caso no ha sido afectada materialmente por su servicio militar, impidiéndole por tanto obtener una paralización. Por otro lado, si su prueba es al efecto de que sus cofiadores le traspasaron sus participaciones en las propiedades sin que mediara *causa,* después que la demanda para ejecutar las hipotecas había sido radicada, ello tendería a demostrar que una participación en la propiedad ha sido traspasada con la intención de dilatar la ejecución de un derecho civil, obligando a la corte a proceder de acuerdo con la sección 580 como si nunca se hubiera aprobado el 'Civil Relief Act'.

"Debe también indicarse, aún cuando el soldado en este caso, quien entró al servicio militar en octubre de 1940, establezca que la sección 580 no tiene aplicación a los hechos de este caso, que éste no tiene derecho a una paralización de los procedimientos de acuerdo con esta Ley en cuanto a la porción de la propiedad que adquirió, sujeta a las hipotecas aquí envueltas, el 22 de septiembre de 1941. Esta Ley, aprobada el 17 de octubre de 1940, específicamente limita tal remedio a las 'obligaciones originadas con anterioridad a la fecha de la aprobación de esta Ley y garantizadas por hipoteca... sobre propiedad inmueble o mueble poseída por una persona en servicio militar al comienzo del período de tal servicio y todavía poseída

por ella.' 50 U. S. C. A., Apéndice, Sección 532(1); *Twitchell* v. *Home Owners' Loan Corporation,* 122 P.(2) 210, 212 (Ariz. 1942). .Véase *Bianchi* v. *Pierazzi et al.,* 25 D.P.R. 631.

■ ''La resolución de la corte de distrito suscitó el otro punto al decir lo siguiente:

'' 'En cuanto a que el procedimiento pueda suspenderse tan. sólo contra el primero [el soldado] siguiéndose el caso contra los demás codemandados, debemos decir que, aceptando para los fines de la argumentación que los demás codemandados sean todavía los dueños, entendemos que tratándose de una hipoteca de bienes poseídos en común pro indiviso no podría ejecutarse la hipotecá parcialmente contra los demás codemandados excluyendo a Manuel Guillermo.'

''Sin embargo, el récord en este caso demuestra que los tres hijos, en dos documentos separados, cada' uno hipotecó separadamente su participación de un octavo en ·seis fincas poseídas en común pro indiviso con otros para responder, solidariamente, de la obligación de' su padre para con Canet. En su consecuencia, aun cuando el procedimiento finalmente se paralizara en cuanto al soldado, no vemos razón alguna por la cual el pleito de ejecución no pueda continuar en cuanto a Isabel Epitacia y Buenaventura. Esto no tendría el efecto, como alega la corte inferior, de ejecutar una hipoteca parcialmente. Simplemente tendría por resultado la ejecución de las hipotecas separadas de Isabel Epitacia y Buenaventura. El comprador en la subasta se subrogaría en sus derechos, incluyendo el de la partición. Secciones 333, 334, Código Civil de Puerto Rico (ed. 1930); *Martínez* v. *Mora et al.,* 33 D.P.R. 149. *Cf. Benítez* v. *Bank of Nova Scotia,* 110 F. (2) 169, 172.

''Aun resta otro motivo que justifica el que se continúen sin interrupción los procedimientos en cuanto a los otros demandados, en caso de concederse una paralización de los procedimientos en favor del soldado. Como ya se ha indicado, cada uno de los demandados aquí envueltos es responsable solidariamente por la cantidad total de la obligación, y pueden ser demandados separadamente en cobro de la misma. (*Morales* v. *Cabrera, supra.*) Si se concediera al soldado la paralización de los procedimientos, el demandante tendría por tanto derecho a una decisión en cuanto a la aplicabilidad de 50 U. S. C. A., Apéndice, Sección 524, al efecto de que 'Cuando la persona que está en servicio militar es codemandada en unión a otras, el demandante puede no obstante proceder, con permiso de la corte, contra los otros.' Véase *Modern Industrial Bank* v. *Zaentz,* 29 N.Y.S. (2) 969, 973.

■ "Las restantes cuestiones suscitadas en este caso pueden ser resueltas brevemente. La corte de distrito tuvo razón al indicar que el 'Civil Relief Act, es aplicable tanto a la paralización de un pleito sobre ejecución de hipoteca (Secciones 521 y 532) como a levantamientos de embargo (Sección 523(b)), y que ambas situaciones concurren en este caso.

"No hay duda alguna en cuanto al emplazamiento en este caso, toda vez que el abogado de los demandados compareció generalmente a nombre de todos ellos y radicó una contestación negando las alegaciones de la demanda.

■ "En lo que respecta a la prueba de servicio militar, sería preferible que se obtuviera, de acuerdo con el Título 50, U. S. C. A., Apéndice, Sección 581, una certificación a tal efecto de la autoridad militar correspondiente, en lugar de descansar en prueba obtenida por otros medios. Pero no vemos razón alguna por la cual deba insistirse en ese medio de prueba, excluyendo cualquier otra evidencia pertinente y satisfactoria.

"La resolución de la corte de distrito paralizando los procedimientos será revocada y el caso devuelto para ulteriores procedimientos no inconsistentes con esta opinión."

Tras un estudio cuidadoso de los autos, encontramos que las cuestiones envueltas en el *certiorari* fueron tan claramente expuestas y resueltas de modo tan correcto por el juez de turno, que no hay base para la interposición del recurso, pudiendo en tal virtud calificarse de frívolo.

Se trata de una situación jurídica que puede surgir en repetidas ocasiones, y estando conforme la corte además con el criterio de su Juez Asociado en la forma expresada, no debe dilatarse su aceptación como su propia opinión, para beneficio de tribunales y litigantes y de la comunidad en general.

*Procede en su consecuencia declarar con lugar la moción y desestimar por frívolo el recurso.*

El Juez Asociado Sr. Snyder no intervino.