ANGELINA FUENTES, peticionaria, *v.* TRIBUNAL DE DISTRITO DE PUERTO RICO, SECCIÓN DE HUMACAO, demandado; DOMINGO FUENTES OSORIO, interventor.

Núm. 1918.—*Sometido:* Agosto 26, 1952. *Resuelto:* Octubre 17, 1952.

960

*Bolívar Pagán,* abogado de la peticionaria; *Juan Nevares San‑tiago,* abogado del interventor, demandante en el pleito prin‑cipal.

El Juez Asociado Señor Ortiz emitió la opinión del tribunal.

El día 31 de mayo de 1946 Domingo Osorio, también conocido por Domingo Motta Osorio, radicó en la antigua Corte de Distrito de Humacao, a la que nos referiremos de ahora en adelante como el tribunal de Humacao, una demanda de filiación y reclamación de herencia contra la sucesión desconocida de Manuel Fuentes, compuesta por los herederos desconocidos John Doe y Richard Doe. En esa demanda se alegaba que el demandante Domingo Osorio nació el día 24 de mayo de 1891, como hijo natural de doña Ramona Osorio; que el supuesto padre del demandante, Manuel Fuentes Ramos, vivió en concubinato con doña Ramona Osorio, o sea, la madre del demandante y que de esas relaciones nació Domingo Osorio, siendo Manuel Fuentes soltero para la época de la concepción y nacimiento del demandante; que el demandante disfrutó de la posesión continua de estado como hijo natural de Manuel Fuentes y que dicho Manuel Fuentes Ramos falleció el día 22 de marzo de 1946, sin haber otorgado testamento ni haberse casado, "no habiendo dejado herederos que sepa el demandante con excepción del propio demandante".

Siendo los herederos desconocidos se hizo la citación mediante la publicación de edictos y después de haber transcurrido el término estatutario correspondiente, no compareció persona alguna a oponerse a la demanda y el demandante obtuvo una sentencia en rebeldía a su favor, habiéndose practicado la vista correspondiente en que se presentó prueba testifical y documental. En la sentencia, que se dictó el día 24 de septiembre de 1946, el tribunal de Humacao declaró que el demandante era hijo natural reconocido de Manuel Fuentes Ramos, con todos los derechos y obligaciones que la ley le reconocía como tal hijo y se ordenó la inscripción correspondiente de la sentencia en el Registro Demográfico de Fajardo. En esa misma sentencia se declaró sin lugar la segunda causa de acción alegada en la demanda, en virtud

de la cual se solicitaba que se entregase al demandante ciertos bienes que eran de la propiedad del padre de dicho demandante y se alegaba que esos bienes estaban en la posesión de Mercedes, Angelina y Cruz Fuentes. Se dijo en la sentencia que como esas personas no habían sido hechas partes en el pleito ni habían sido emplazadas debidamente, se declaraba sin lugar dicha segunda causa de acción. Contra esa sentencia no hubo apelación alguna, y ella adquirió el carácter de firme.

Posteriormente Mercedes Fuentes de Jesús, Cruz Fuentes Pérez y Felipa Fuentes Romero radicaron en la antigua Corte de Distrito de San Juan, a la que nos referiremos de ahora en adelante como el tribunal de San Juan, una acción sobre nulidad de sentencia, reivindicación y otros extremos, a la cual nos referiremos de aquí en adelante como la acción de nulidad. En esa demanda de nulidad se alegó en síntesis que Manuel Fuentes Ramos falleció en San Juan el día 22 de marzo de 1946 y que por resolución del tribunal de San Juan, de fecha 23 de mayo de 1946, las tres demandantes ya mencionadas fueron declaradas únicas y universales herederas del referido Manuel Fuentes Ramos. Se siguió alegando en esa demanda de nulidad que la sentencia dictada por el tribunal de Humacao era nula y sin valor legal alguno porque las tres demandantes, que eran sobrinas del causante Manuel Fuentes Ramos, no habían sido incluídas como partes ni emplazadas en la acción tramitada en el tribunal de Humaco y que las alegaciones del demandante Domingo Osorio, en virtud de las cuales él obtuvo una citación por edictos, eran falsas y fueron hechas a sabiendas de que eran falsas porque el propio Domingo Osorio tenía conocimiento de que esas demandantes eran herederas del causante Manuel Fuentes Ramos y que no se trataba, por lo tanto, de un caso de herederos desconocidos. Contestó el demandado en el pleito de nulidad, Domingo Osorio, negando los hechos y exponiendo ciertas de-

fensas especiales. (¹)    Así trabada la contienda fué el pleito de nulidad a juicio y una vez que las demandantes terminaron de presentar su prueba, el tribunal, a petición del demandado dictó sentencia desestimando la demanda en cuanto a Mercedes Fuentes de Jesús y Cruz Fuentes Pérez por ser sobrinas ilegítimas de Manuel Fuentes Ramos y carecer, por lo tanto, de interés en el pleito.    La demandante Felipa Fuentes, conocida como Angelina Fuentes, anunció entonces al tribunal que renunciaba a cualquier controversia planteada por la demanda que no fuera la de la nulidad de la sentencia dictada por el tribunal de Humacao declarando a Domingo Osorio hijo natural reconocido de Manuel Fuentes Ramos y la nulidad de las actuaciones posteriores fundadas en dicha sentencia.    Considerando la prueba presentada el tribunal de San Juan dictó sentencia el día 9 de febrero de 1951 declarando con lugar la demanda de nulidad de sentencia y otros extremos y anulando y dejando sin efecto la sentencia en rebeldía dictada por el tribunal de Humacao el día 24 de septiembre de 1946 sobre filiación y reclamación de herencia, en virtud de cuya sentencia así anulada se había declarado al allí demandante, Domingo Osorio, hijo natural reconocido de Manuel Fuentes.    También se anuló, en virtud de la sentencia en el pleito de nulidad, la resolución dictada por el tribunal de San Juan el día 2 de octubre de 1947 declarando a Domingo Osorio único y universal heredero de Manuel Fuentes y se decretó la nulidad de la inscripción practicada en el Registro Demográfico de Fajardo, en virtud de cuya inscripción se había cambiado el nombre de Domingo Osorio por el de Domingo Fuentes Osorio.    En las conclusiones de hecho y de derecho a que llegó el tribunal de San Juan, y que le sirvieron de base a la sentencia ya mencionada, el tribunal inferior resolvió, en síntesis, que Manuel Fuentes Ramos había fallecido el día 22 de marzo de 1946; que él era

---

(¹) Las alegaciones de Domingo Osorio en la acción de nulidad no forman parte del récord de este caso que está ahora ante nos, pero el tribunal de San Juan hizo referencia a esas alegaciones en su Resolución y Sentencia.

hijo legítimo de Vicente Fuentes y de Valentina Ramos y que la demandante en el pleito de nulidad, Felipa Fuentes Romero, era y es hija legítima de Zenón Fuentes Ramos, quien a su vez era hermano legítimo del causante Manuel Fuentes Ramos; que Domingo Osorio conocía desde hacía más de veinte años a Felipa Fuentes Romero y tenía conocimiento de que ella era sobrina legítima de Manuel Fuentes Ramos y que a su fallecimiento Manuel Fuentes Ramos no dejó padres ni hermanos vivos. Concluyó el tribunal de San Juan que teniendo conocimiento Domingo Osorio del hecho de que Felipa Fuentes Romero era sobrina legítima de Manuel Fuentes Ramos él conocía, para la fecha en que radicó su acción de filiación, las personas que componían la sucesión de Manuel Fuentes y que, por lo tanto, según el tribunal de San Juan, las alegaciones o afirmaciones hechas por Domingo Osorio, tanto en su demanda como en la moción solicitando la citación de los demandados por medio de la publicación de edictos, en el sentido de que desconocía la sucesión de Manuel Fuentes, no eran ciertas. Resolvió el tribunal de San Juan que Domingo Osorio había ocultado hechos al tribunal de Humacao con el propósito de obtener la orden de citación por medio de la publicación de edictos, evitando así la obligación de citar personalmente a las sobrinas de Manuel Fuentes e indicó el tribunal de San Juan que el propio Domingo Osorio había declarado como testigo al efecto de que él sabía de antemano que Felipa Fuentes Romero era sobrina legítima de Manuel Fuentes Ramos. También resolvió el tribunal de San Juan que la demanda en el caso de filiación no estaba jurada ni tampoco lo estaba la moción solicitando la citación por edictos, y el *affidavit* de méritos que se acompañó a dicha moción no contenía hechos demostrativos de que existía una causa de acción a favor del demandante y siendo ello un requisito jurisdiccional la orden de publicación de edictos era nula siendo nula también la sentencia por falta de jurisdicción y siendo nula además dicha sentencia por el fundamento

adicional de que había sido obtenida a través de alegaciones falsas de Domingo Osorio en cuanto a que la sucesión se componía de herederos desconocidos.

La sentencia dictada por el tribunal de San Juan declarando con lugar la demanda de nulidad no fué apelada para ante este Tribunal Supremo y se convirtió en firme. Así las cosas, el día 4 de mayo de 1951 Domingo Osorio radicó una demanda enmendada en el Tribunal de Distrito de Puerto Rico, Sección de Humacao, sobre filiación y reclamación de herencia contra Manuel Fuentes, hoy su sucesión, compuesta por John Doe y Richard Roe y por Felipa Fuentes, conocida por Angelina Fuentes. La diferencia entre la demanda enmendada y la demanda original consiste en que en la demanda enmendada se incluyó a Felipa Fuentes como parte y como miembro de la sucesión de Manuel Fuentes, habiéndose eliminado la segunda causa de acción que había sido ya antes desestimada por la propia corte de Humacao. Compareció entonces la demandada Angelina Fuentes y contestando la demanda negó todos los hechos alegados en la demanda enmendada y alegó además que esa demanda enmendada no aducía hechos para constituir una causa de acción contra la demandada Angelina Fuentes y se expuso como defensa adicional que la demandada Angelina Fuentes había sido hecha parte demandada en el caso desde el día 4 de mayo de 1951 y que, por lo tanto, la acción había prescrito de acuerdo con los artículos 137 del Código Civil vigente en Puerto Rico en la fecha del nacimiento del demandante, 189 y 199 del Código Civil Revisado de 1902, y 193 y 194 del Código Civil de Puerto Rico según fué enmendado por la Ley núm. 73 aprobada en 1911 (pág. 247).

El día 31 de mayo de 1951 la demandada Angelina Fuentes presentó ante el tribunal de Humacao una moción solicitando una sentencia sumaria en el pleito de filiación, alegando lo que ya hemos expuesto en cuanto a que la acción contra Angelina Fuentes estaba prescrita, en virtud de los artículos ya citados del Código Civil. A esa moción de sen-

tencia sumaria la demandada acompañó la sentencia y la opinión dictadas por el tribunal de San Juan en el caso de nulidad, cuya sentencia y opinión ya hemos expuesto. El tribunal de Humacao declaró sin lugar dicha moción de sentencia sumaria presentada por la demandada Angelina Fuentes y también declaró sin lugar dos mociones de reconsideración presentadas por esa demandada, resolviendo el tribunal de Humacao que la acción contra Angelina Fuentes no había prescrito ya que la demanda original en el caso de filiación había sido radicada el día 31 de mayo de 1946, o sea, dentro de un año de la fecha de la muerte de Manuel Fuentes Ramos y que esa demanda original había interrumpido el término estatutario de prescripción, de acuerdo con el artículo 1873 del Código Civil de Puerto Rico.

Impugnando la resolución dictada por el tribunal de Humacao declarando sin lugar la moción de sentencia sumaria, la demandada Angelina Fuentes presentó ante este Tribunal Supremo una petición de *certiorari*, y este Tribunal expidió el auto, habiéndose elevado el récord correspondiente ante este Tribunal.

■■ El problema sometido ahora a nuestra consideración consiste en determinar si la demanda enmendada contra Angelina Fuentes está o no está prescrita, y si la demanda original presentada por Domingo Osorio contra la sucesión desconocida de Manuel Fuentes Ramos constituía o no una interrupción legalmente suficiente del término prescriptivo aplicable a acciones de filiación presentadas por un hijo natural.

Alega en primer lugar la peticionaria Angelina Fuentes que la acción de filiación contra ella y contra los demás demandados está prescrita de acuerdo con el artículo 137 del Código Civil Español vigente en Puerto Rico en la fecha del nacimiento del demandante y de acuerdo con los artículos 198 y 199 del Código Civil Revisado aprobado en 1902. En la demanda de filiación se alega que el demandante Domingo

Osorio nació el día 24 de mayo de 1891. Para esa fecha regía en Puerto Rico el antiguo Código Civil Español, el cual estuvo vigente en nuestra isla hasta el año 1902. Bajo el artículo 137 de dicho código la acción de filiación tenía que ser presentada en vida de los presuntos padres, o si hubiesen fallecido durante la menor edad del reclamante la acción podía establecerse dentro de los primeros cuatro años de su mayor edad. Ese artículo 137 fué sustituído en el año 1902 por el artículo 199 del Código Civil Revisado de 1902, que disponía que la acción para reclamar la filiación dura hasta dos años después de ser el hijo mayor de edad. Sobre la historia de esas disposiciones estatutarias en cuanto a la prescripción de acciones de filiación véanse los casos de *Gual et al* v. *Bonafoux*, 15 D.P.R. 559, 565, 569; *Orta* v. *Arzuaga*, 23 D.P.R. 259; *Torres* v. *Sucn. Cautiño*, 70 D.P.R. 646, 651 y *Cortez* v. *Sucn. Solá*, 72 D.P.R. 627. De aplicarse a este caso exclusivamente el artículo 137 del antiguo Código Civil Español, vigente en la fecha del nacimiento de Domingo Osorio, o el artículo 199 del Código Civil Revisado de 1902, tanto la demanda original como la demanda enmendada presentadas por dicho Domingo Osorio estarían prescritas y la moción de sentencia sumaria debía haber sido declarada con lugar, ya que la acción de filiación no se presentó en vida de Manuel Fuentes Ramos y se presentó más de treinta y cuatro años después de haber llegado Domingo Osorio a su mayor edad. Sin embargo, en el año 1911, cuando el demandante tenía poco menos de veinte años de edad, nuestra Asamblea Legislativa enmendó el Código Civil en cuanto a términos prescriptivos de acciones de filiación, ya que por la Ley núm. 73 de 9 de marzo de 1911 se derogó expresamente el artículo 199 del Código Civil de 1902 y en su lugar se aprobó el artículo 194 que es igual al artículo 126 de nuestro Código Civil vigente, edición de 1930. Dicho artículo 126 de nuestro Código Civil, que ha seguido vigente desde el 9 de marzo de 1911 hasta la fecha actual, dispone que las acciones para el reconoci-

miento de hijos naturales sólo podrán ejercitarse en vida de los presuntos padres o un año después de su muerte, salvo algunos casos que no son aplicables al caso dè autos. Dicho artículo 126 regía en la fecha del fallecimiento de Manuel Fuentes Ramos, o sea, el día 22 de marzo de 1946, según lo alegado en la demanda. De ser aplicable tal artículo 126 a las circunstancias de este caso, tendríamos que Domingo Osorio radicó su demanda original de filiación dentro del año posterior al fallecimiento de su alegado causante Manuel Fuentes Ramos.

Ya este Tribunal Supremo ha resuelto que el artículo 126 del Código Civil, aprobado en virtud de la ley de 9 de marzo de 1911, no tiene aplicación a un caso de reconocimiento cuando la acción de filiación ya estaba prescrita en la fecha en que empezó a regir dicha ley de 9 de marzo de 1911. *Jesús* v. *Sucn. Pérez Villamil*, 18 D.P.R. 403; *Roble* v. *Sucn. Pérez*, 18 D.P.R. 929; *Ramírez et al* v. *Ramírez et al*, 30 D.P.R. 617; *López* v. *López et al*, 23 D.P.R. 824 y *Resto* v. *Silva*, 38 D.P.R. 332. Una vez vencido el término prescriptivo, un hijo natural no puede revivir su caducado derecho en virtud de las disposiciones de una ley aprobada después de haber vencido el término prescriptivo. *Questel* v. *Conde et al*, 18 D.P.R. 752 y *Orta* v. *Arzuaga et al*, supra. La regla legal arriba enunciada no es aplicable a las circunstancias y hechos de este caso, tal como dichos hechos y circunstancias surgen de las alegaciones y documentos sometidos a la corte inferior al resolver la moción de sentencia sumaria. Al aprobarse el artículo 126 del Código Civil el 9 de marzo de 1911 el alegado causante de Domingo Osorio, Manuel Fuentes Ramos, aún estaba vivo y, por lo tanto, el remedio que podía tener Domingo Osorio bajo las disposiciones del artículo 137 del antiguo Código Civil Español aún no había caducado. El día 9 de marzo de 1911 Domingo Osorio no había llegado aún a su mayor edad y, por lo tanto, el remedio o la causa de acción que podía tener Domingo Osorio bajo las disposiciones del

artículo 199 del Código Civil Revisado de 1902 tampoco había caducado. Inmediatamente antes de aprobarse el artículo 126 el 9 de marzo de 1911 el aquí reclamante tenía un derecho potencial o una esperanza de reclamar su filiación dentro de los dos años posteriores a su mayor edad, que él cumplía el día 24 de mayo de 1912. El artículo 126 le concedió a Domingo Osorio por lo menos un derecho adicional y más amplio, o sea, el de poder radicar su acción de filiación dentro del año posterior a la fecha del fallecimiento de su causante, aun si para esa fecha ya hubiesen transcurrido los dos años posteriores a su mayor edad que le concedía el artículo 199 del Código Civil Revisado de 1902.[2] Al fallecer su alegado causante, el aquí reclamante Domingo Osorio tenía derecho a acogerse a las disposiciones del artículo 126 de nuestro Código Civil, no siendo aplicables a este caso los ya mencionados artículos 137 del antiguo Código Civil Español y el 199 del Código Civil Revisado de 1902, teniendo en cuenta especialmente que el artículo 126 al ser incorporado a nuestro Código Civil en virtud de la ley aprobada el 9 de marzo de 1911, no tuvo el efecto de revivir derechos ya caducados, sino que más bien consolidó y amplió la causa de acción disfrutada por el demandante en el caso de autos.

En el caso de *González* v. *Rodríguez*, 43 D.P.R. 66, se dice lo siguiente:

"Se trata de un pleito de filiación. La Corte de Distrito de Arecibo dictó la siguiente opinión al declarar con lugar una excepción previa:

" 'Jovito González radicó en la Corte de Distrito de San Juan el 28 de septiembre de 1929 demanda sobre filiación contra Jo-

---

[2] Por analogía véase el caso de *Torres* v. *Sucn. Cautiño*, 70 D.P.R. 646, en donde se dice lo siguiente a la página 653:

"La ley vigente al nacer el demandante le reconoció un derecho y le fijó un término para ejercitar la acción para dejar establecido judicialmente dicho derecho. Luego el legislador derogó dicho término específico siendo el demandante menor de edad, pero no le privó de su acción, ya que le concedió el término supletorio de quince años establecido en el código para ejercitar las acciones personales, el cual es más que razonable, ya que amplió en trece años el término original que tenía el demandante bajo el artículo 199, supra."

vito Rodríguez, en la que alega que nació en Morovis el día 3 de marzo de 1903 mientras su madre Ventura González y su supuesto padre Jovito Rodríguez vivían en concubinato público, teniéndole dicho Jovito Rodríguez pública y privadamente como hijo suyo, realizando con él actos de padre para con un hijo, y sin que tales relaciones hayan sido interrumpidas en momento alguno desde el nacimiento del demandante. A esa demanda se estableció por el demandado la excepción previa de que la acción está prescrita. Por virtud de una orden de traslado, esta corte está conociendo de este asunto.

" 'La excepción previa fué vista y discutida el 17 de marzo de 1930, estando presentes las partes por sus abogados, la corte se reservó su resolución.

" 'El demandante nació, según alega bajo juramento, el 3 de marzo de 1903; por tanto, arribó a su mayor edad el 4 (sic) de marzo de 1924. De acuerdo con el artículo 199 del Código Civil vigente a la fecha del nacimiento del demandante, la acción para reclamar su filiación sólo duró hasta dos años después de haber llegado a la mayor edad. Su acción, por tanto, sólo pudo ser establecida en o antes del tres de marzo de 1926. La demanda se archivó, como hemos dicho, en 28 de febrero de 1929, cuando la acción ya estaba prescrita. *Jesús* v. *Sucn. Pérez Villamil,* 18 D.P.R. 403; *Orta* v. *Arzuaga,* 23 D.P.R. 259.

" 'Se declara con lugar la excepción previa radicada por el demandado.'

"El apelado sugiere que el caso de *Ciuró* v. *Ciuró,* 31 D.P.R. 730, también es aplicable.

"Poco o nada tenemos que agregar a nuestra previa jurisprudencia sobre la materia. Nos parece que las tentativas del apelante simplemente cubren el mismo terreno abarcado por las partes perdidosas en los casos anteriores."

Debe advertirse que en este último caso de *González* v. *Rodríguez* el demandante había nacido el día 3 de marzo de 1903 y que, por lo tanto, al aprobarse el artículo 126 de nuestro Código Civil el 9 de marzo de 1911 su causa de acción aún no había prescrito ni había caducado. Sin embargo este Tribunal Supremo no consideró en forma alguna la posible aplicabilidad de dicho artículo 126 que le concedía el derecho al demandante a radicar su demanda de filiación dentro de un año después de la muerte de su causante. Cuando se radicó

la demanda el supuesto padre del demandante aún estaba vivo. Bajo el ya citado artículo 126 el demandante tenía el derecho a ejercitar su acción en vida de su presunto padre o dentro del año posterior a su fallecimiento. El demandante radicó su acción en vida de su presunto padre y bajo el artículo 126 su acción no estaba prescrita. Realmente, entendemos y resolvemos que la opinión emitida por este Tribunal Supremo en dicho caso de *González* v. *Rodríguez* conlleva un criterio demasiado restrictivo y se aparta de la realidad jurídica que surgió de la aprobación del ya mencionado artículo 126 y privó al demandante de su oportunidad para acogerse a las disposiciones del tantas veces citado artículo 126 de nuestro Código Civil. Por lo tanto, el referido caso de *González* v. *Rodríguez* debe ser considerado como revocado.

Precisamente en el caso de *Ortiz* v. *Sucn. Stella*, 47 D.P.R. 117, se desaprobó la doctrina contenida en el caso de *González* v. *Rodríguez*, supra, aunque el caso no fué revocado expresamente. En este último caso de *Ortiz* v. *Sucn. Stella*, supra, se resolvió lo siguiente:

"Un hijo nacido durante la vigencia del Código Civil Revisado y cuyo derecho a ejercitar su acción de filiación no hubiere prescrito en el 1911, a la fecha en que se aprobaron las enmiendas a dicho código por las que se derogó el artículo 199 y se aprobó el 194, tiene acción para reclamar su filiación hasta un año después de muerto su presunto padre."

En las páginas 121 y 122 se dice lo siguiente:

"En el caso de *Guadalupe* v. *González* se inició una acción de filiación en 10 de noviembre de 1931. Se probó que la demandante, al radicarse la demanda, tenía de 23 a 25 años de edad, habiendo nacido bajo las disposiciones del artículo 199 del Código Civil anteriormente copiado, y antes de aprobarse, en 1911, el artículo 194 del mismo código. 'Siendo ello así,' dijo esta corte, 'la ley aplicable de acuerdo con la 4ª de las disposiciones transitorias del Código Civil, sería el artículo 194 de dicho código, tal como fué enmendado en 1911, y como por dicha enmienda se establece que la acción para el reconocimiento podrá ejercitarse en vida de los presuntos padres, o *un año des-*

*pués de su muerte,* y como no había transcurrido un año después de la muerte del presunto padre cuando la acción fué ejercitada en este caso, erró la corte al considerar la acción prescrita.'

"Es claro que en los casos de *Guadalupe* v. *González* y *González* v. *Rodríguez* el derecho a ejercitar la acción de filiación no había prescrito en 1911, cuando se aprobaron las enmiendas al Código Civil. Estos casos sostienen criterios opuestos. El primero aplica el artículo 194, aprobado en 1911, y no la ley en vigor cuando nació la demandante, y declara que no ha prescrito la acción; el segundo sostiene que debe aplicarse la ley en vigor cuando nació el demandante y que de acuerdo con esa ley dicha acción sólo duró hasta dos años después de haber llegado a la mayor edad.

"No difiere el presente caso de los dos que acabamos de citar. Mateo Ortiz nació en 23 de noviembre de 1902, época en que la ley vigente prescribía que la acción para reclamar la filiación de los entonces nacidos sólo duraba hasta dos años después de haber llegado a su mayor edad. En 1911, cuando se aprobaron las enmiendas al Código Civil, el demandante aún no había cumplido nueve años. Su derecho para reclamar la filiación duraba todavía. La acción no había quedado extinguida por el transcurso del tiempo. El demandante inició este pleito en 18 de febrero de 1930, antes de haber transcurrido un año después de la muerte de su presunto padre, quien falleció en 27 de diciembre de 1929. ¿Extendió la nueva ley su derecho para reclamar su reconocimiento hasta un año después de muerto su presunto padre, o quedó este derecho extinguido al cumplir los veintitrés años de edad? Esta es la cuestión que debemos decidir, para que quede así sentado el criterio de este Tribunal."

En la página 126 se resuelve lo siguiente:

"El carácter retroactivo de la regla 4a., aplicado al presente caso, no perjudica ningún derecho adquirido, porque en 1911, cuando fué enmendado el Código Civil, subsistía la acción de Mateo Ortiz en toda su fuerza y vigor, y si no se había extinguido y su extinción dependía del transcurso del tiempo, la mera expectativa o esperanza de que habla Manresa, cuyo cumplimiento o realización depende de una multitud de eventualidades, no se había convertido en un derecho creado al entrar en vigor las enmiendas al Código Civil.

"Opinamos que debe prevalecer la doctrina sentada por esta corte en el caso de *Guadalupe* v. *González,* supra, y que no ha prescrito la acción ejercitada."

En el caso de *Torres* v. *Sucn. Cautiño,* 70 D.P.R. 646, se trataba de un hijo adulterino. Se resolvió que por el artículo 199 del Código Civil de 1902 se eliminó la distinción histórica entre hijos naturales y los demás hijos ilegítimos pero que al aprobarse en el año 1911 la Ley núm. 73 (artículo 194 hoy 126 del Código Civil), se restableció tal distinción y, aunque se fijó un término prescriptivo con respecto a hijos naturales no se fijó término prescriptivo alguno con respecto a hijos adulterinos. Se resolvió, por lo tanto, que estos últimos podían acogerse a un término prescriptivo de 15 años después de su mayoridad fijado para las acciones personales por el artículo 1864 del Código Civil en relación con el 40 del Código de Enjuiciamiento Civil. Sin embargo, en el curso de su opinión, a manera de *dictum* y al comentar el caso de *Ortiz* v. *Sucn. Stella,* supra, que se refería a un hijo natural, este Tribunal da a entender que el término prescriptivo de 15 años computados después de la mayor edad es también aplicable a hijos naturales. (Págs. 654 y 655 del caso de *Torres* v. *Sucn. Cautiño.* Realmente, como hemos indicado anteriormente, la ley núm 73 de 1911 fijó un término específico de prescripción para los hijos naturales, o sea, que dispuso que los hijos naturales podrían interponer su acción en vida de sus presuntos padres o un año después de su muerte. Por lo tanto no es de aplicación a un hijo natural como el del caso de autos, el artículo 1864 de nuestro Código Civil que dispone que las acciones personales que no tengan señalado término especial de prescripción, prescribirán a los 15 años, ya que la acción filiatoria de un hijo natural tiene señalado un término especial de prescripción, bajo dicha Ley núm. 73 de 1911. El ya mencionado dictum expresado en *Torres* v. *Sucn. Cautiño,* supra, es incompatible con esta opinión y, por lo tanto, tal dictum debe ser considerado como revocado. No es aplicable a un presunto hijo natural como el del caso de

autos el término prescriptivo de 15 años computados después de su mayor edad, sino que es aplicable el término prescriptivo establecido en el artículo 126 de nuestro Código Civil.

En el caso de *Cortez* v. *Sucn. Solá*, supra, el demandante y presunto hijo adulterino nació el 31 de mayo de 1893 y su supuesto padre falleció el día 5 de agosto de 1918. Resolvió este Tribunal Supremo que siendo el demandante un hijo adulterino, no existía término prescriptivo alguno que pudiese correr contra el demandante, no siendo, por lo tanto, aplicable ni el artículo 137 del Código Civil Español, ni el 199 del Código Civil Revisado de 1902 ni el 194 que correspondía al actual 126 de dicho cuerpo legal. *Torres* v. *Sucn. Cautiño*, supra. Cuando falleció el presunto padre del demandante éste no tenía causa de acción filiatoria, dada su condición de hijo adulterino pero al aprobarse la Ley núm. 243 de 12 de mayo de 1945 (pág. 815), que enmendó la número 229 de 12 de mayo de 1942 ((1) pág. 1297), surgió una causa de acción en beneficio de hijos adulterinos, debiendo tramitarse la acción de acuerdo con el procedimiento fijado en el Código Civil para el reconocimiento de hijos naturales, o sea, dentro del año posterior al fallecimiento del padre. A pesar de que el presunto padre había fallecido el 5 de agosto de 1918, este Tribunal Supremo resolvió, incidentalmente, que el hijo adulterino podía haber entablado su acción no un año después de la muerte de su padre, sino dentro del año posterior a la aprobación de la ya citada Ley 243. Sin embargo, en ese caso el demandante radicó su acción más de un año después de la aprobación de la Ley 243 y, por lo tanto, su acción estaba prescrita.

En conclusión, Domingo Osorio radicó su demanda original bajo el imperio de las disposiciones del artículo 126 de nuestro Código Civil, que es aplicable al caso de autos. Sin embargo, él no radicó su demanda original contra Felipa Fuentes, conocida por Angelina Fuentes. Al incluir como parte demandada a dicha Angelina Fuentes en su demanda enmendada ya había transcurrido un año después del falleci-

miento de Manuel Fuentes. Se alega que la demanda original sirvió de interrupción eficaz en cuanto a la prescripción de la acción incoada en este caso.

Los artículos 1873 y 1874 de nuestro Código Civil disponen lo siguiente:

"Artículo 1873.—La prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor.

"Artículo 1874.—La interrupción de la prescripción de acciones en las obligaciones solidarias aprovecha o perjudica por igual a todos los acreedores y deudores.

"Esta disposición rige igualmente respecto a los herederos del deudor en toda clase de obligaciones.

"En las obligaciones mancomunadas, cuando el acreedor no reclame de uno de los deudores más que la parte que le corresponda, no se interrumpe por ello la prescripción respecto a los otros codeudores."

La demanda original fué presentada contra la sucesión de Manuel Fuentes, compuesta por sus herederos desconocidos John Doe y Richard Roe. Una acción contra algunos herederos interrumpe la prescripción en cuanto a otros coherederos ya que bajo el citado artículo 1874 de nuestro Código Civil la interrupción de la prescripción de acción en las obligaciones solidarias aprovecha o perjudica por igual a todos los acreedores y deudores. Los herederos son deudores solidarios. Los herederos son solidariamente responsables de las obligaciones del causante, háyase o no efectuado la partición de la herencia. *Morales* v. *Cabrera*, 53 D.P.R. 94; *Brunet* v. *Sucn. Nin*, 57 D.P.R. 804 y *Hernández et al* v. *Cuevas et al*, 16 D.P.R. 546.

En el caso de Louisiana de *Zeller* v. *Lousiana Cypress Co.*, 121 So. 670, se resuelve que una demanda interpuesta contra uno de varios deudores solidarios interrumpe la prescripción en cuanto a los otros. Véase además el caso de *Cox* v. *Shreveport Packing Co.*, 34 So.2d 373.

En el caso de *Maurin* v. *Martínez*, La. 5 Mart (O.S.) 432, se resuelve que una demanda contra herederos interrumpe la prescripción en cuanto a otros.

En 12 Manresa 964, ed. 1951, al tratar de la interrupción de los términos prescriptivos mediante la interposición de una demanda, se dice lo siguiente:

"Lo dicho acerca de las obligaciones solidarias es aplicable en toda clase de obligaciones respecto de los herederos del deudor, puesto que todos y cada uno de ellos representan al causante y conjuntamente le suceden en sus derechos y obligaciones, encontrándose en el mismo caso que los obligados solidariamente en cuanto al pago de las deudas del mismo."

En *Gual et al* v. *Bonafoux et al*, 15 D.P.R. 559, 568, este Tribunal dijo:

"La corte inferior al estimar prescrita la acción ejercitada indudablemente estimó también que la prescripción no se había interrumpido por reclamación extrajudicial, y nosotros no encontramos razón alguna para rechazar esa apreciación.

"Aún más, prescindiendo de cuanto dejamos expuesto para sostener que la acción de reconocimiento ha prescrito por haber transcurrido el tiempo señalado para su ejercicio por la ley aplicable al caso, parécenos que el artículo 1973 del Código Civil Español que es el 1874 del Revisado, no es de aplicación al caso excepcional de prescripción de que se trata, por cuanto el artículo 1938 del Código Civil antiguo, que es el 1839 del Revisado, establece que las disposiciones del título 18 de ambos Códigos sobre prescripción, se entienden sin perjuicio de lo que en ambos Códigos se establezca respecto a determinados casos de prescripción.

"El caso de prescripción de que estamos tratando es especial y de tal naturaleza, que no cabe interrupción de término, pues si la acción de reconocimiento de hijos naturales sólo ha podido ejercitarse en el tiempo que marca el artículo 137 del Código Civil Español, aplicable al caso, es claro que la acción desaparece y queda extinguida transcurrido el tiempo señalado para su ejercicio.

"Al señalar dicho Código tiempo cierto y determinado para el ejercicio de la acción de reconocimiento, parece como que quiso evitar incertidumbre y amenazas que pudieran perturbar la paz y sosiego de la familia."

En este último caso se trataba de una reclamación extra-judicial y no de la interposición de una acción judicial. El ya citado artículo 1873 de nuestro Código Civil dispone que la prescripción de las acciones se interrumpe por su ejercicio ante los tribunales. Esa disposición estatutaria no establece diferencia alguna entre distintas clases de acciones. Donde la ley no distingue, nosotros no debemos establecer diferencias artificiales (*ubi lex non distinguit nec nos distinguere debemus*). No debemos adoptar una interpretación de una ley de prescripción que implique la destrucción de las oportunidades y remedios de presuntos hijos naturales para que sus alegaciones puedan ser consideradas en un juicio por sus méritos, a menos que esa interpretación esté claramente autorizada por la propia ley.

En *Barros* v. *Padial*, 35 D.P.R. 258, se resuelve:

"El criterio moderno está en contra de la anterior teoría de que las alegaciones de prescripción nunca son favorecidas, pero las cortes darán al estatuto de prescripción una interpretación razonable aunque sin extenderlo más allá de sus claros términos."

No debe adoptarse una interpretación de los estatutos de prescripción que implique el establecimiento de distinciones entre distintas clases de personas, o que produzca un resultado irrazonable. 34 Am. Jur. 42, sec. 39.

El ya citado artículo 1873 de nuestro Código Civil, que determina la interrupción de términos prescriptivos en virtud de reclamaciones judiciales, debe ser interpretado como aplicable a acciones de filiación, y en tanto en cuanto el caso de *Gual et al* v. *Bonafoux et al*, supra, establezca una doctrina contraria, tal caso debe considerarse como revocado en cuanto a este extremo. También deben ser considerados como revocados los casos de *Ciuró* v. *Ciuró et al*, supra, y *Jesús* v. *Sucn. Pérez Villamil*, supra, en los cuales se establece el mismo dictamen erróneo del caso de *Gual et al* v. *Bonafoux et al*, supra.

■ No obstante lo anteriormente expuesto, la demanda original no incluye como demandado a ningún heredero espe-

cífico sino que se instó contra la sucesión desconocida de Manuel Fuentes, compuesta por los herederos desconocidos John Doe y Richard Roe. No se trata de un caso en que se demande originalmente a determinado deudor solidario y luego se incluye y se adiciona a otro deudor solidario en la demanda enmendada. En esencia, la demanda original se entabló contra los herederos "desconocidos" John Doe y Richard Roe. No se incluyó originalmente como parte demandada a Felipa Fuentes, conocida por Angelina Fuentes (a la cual nos referiremos de aquí en adelante como Angelina Fuentes). Ella era una parte indispensable en la demanda original. Como hemos visto, en la sentencia de nulidad dictada por el tribunal de San Juan se resolvió que Angelina Fuentes era hija legítima de un hermano legítimo, ya fallecido, de Manuel Fuentes y que Domingo Osorio conocía ese hecho, y la existencia de Angelina, antes de radicar su demanda original en el tribunal de Humacao. Esas conclusiones de hecho formuladas por el tribunal de San Juan son obligatorias para ambas partes en el caso pendiente en el tribunal de Humacao, y Domingo Osorio está impedido de impugnar la veracidad de esos hechos, así determinados judicialmente, bajo la doctrina del "impedimento colateral por sentencia" (*collateral estoppel by judgment*). Aún si los casos en los tribunales de San Juan y Humacao envolvían causas de acción distintas, no siendo estrictamente aplicable, por lo tanto, la regla de "res judicata",(³) en el tribunal de San Juan se determinaron

---

(³) Incidentalmente, en el caso de *Calaf et al* v. *Calaf*, 17 D.P.R. 198 se resuelve que "negado, por sentencia firme, el reconocimiento de un hijo natural en una acción de filiación, constituye cosa juzgada esa decisión, y surte efecto en otro juicio en que, habiendo identidad de litigantes y de la calidad en que lo fueran, se solicitare la declaratoria de nulidad de una institución de heredero, y en el que el fundamento principal de esa declaratoria tuviera que ser el reconocimiento de dicho hijo natural con los derechos consiguientes al mismo, pues en ese caso existe también la identidad de cosas y la de causa o razón de pedir, elementos necesarios para que la excepción de cosa juzgada sea eficaz." Este último criterio fué confirmado específicamente por la Corte Suprema de los Estados Unidos en *Calaf* v. *Calaf*, 232 U.S. 371. Véase *Aguilera* v. *Pérez*, 51 D.P.R. 1, 7.

cuestiones de hecho en cuanto al *status* de Angelina Fuentes que son esenciales en cuanto a la sentencia que habría de dictarse finalmente en el tribunal de Humacao. Cuando una cuestión de hecho ("ultimate fact") que es esencial para el pronunciamiento de una sentencia se dilucida realmente y se determina por una sentencia válida y definitiva en un caso, tal determinación es conclusiva en una segunda acción entre las mismas partes aunque estén envueltas causas de acción distintas, bajo la doctrina del "impedimento colateral por sentencia". *Restatement, Judgments*, sec. 68; Suplemento al *Restatement* de 1948, pág. 336; *Long Corporation* v. *Tribl. de Distrito*, 72 D.P.R. 788; *Pueblo* v. *Lugo*, 64 D.P.R. 554; "Collateral Estoppel by Judgment", en 56 Harv. L. Rev. 1; 65 Harv. L. Rev. 840, número de marzo de 1952; 50 C.J.S. 100, sec. 656 y pág. 196, sec. 718 y 142 A.L.R. 1243. La condición de Angelina Fuentes como sobrina legítima y heredera potencial de Manuel Fuentes era esencial en el caso pendiente en el tribunal de Humacao, especialmente en cuanto a su condición como parte indispensable en ese caso, como veremos más adelante.

■ Es indudable que, no habiendo en este caso descendientes ni ascendientes legítimos de Manuel Fuentes, de establecerse judicialmente el status de Domingo Osorio como hijo natural, tratándose aquí de una herencia intestada, él sería el único heredero de Manuel Fuentes, con exclusión de los parientes colaterales y, por lo tanto, con exclusión de Angelina Fuentes. Artículo 902, Código Civil; *Cádiz* v. *Jiménez*, 30 D.P.R. 34, 38; *Junghanns* v. *Cornell University*, 71 D.P.R. 673, 686; *Espinosa* v. *Berríos*, 33 D.P.R. 307; *Sánchez* v. *Corte*, 69 D.P.R. 493. Sin embargo, de no establecerse judicialmente el status de Domingo Osorio como hijo natural, o sea, de declararse sin lugar la demanda incoada por él en el tribunal de Humacao por no establecerse su filiación, Angelina Fuentes sería la única heredera de Manuel Fuentes, bajo el artículo 903 de nuestro Código Civil, que dispone que a

falta de descendientes, ascendientes legítimos e hijos naturales, heredarán los parientes colaterales (no habiendo cónyuges, como ocurre en el caso de autos). Por lo tanto, Angelina Fuentes era una parte esencial e indispensable en el caso pendiente en el tribunal de Humacao, ya que sus derechos hereditarios dependen inexorablemente del resultado del caso que se ha estado ventilando en la actual Sala de Humacao del Tribunal Superior de Puerto Rico.

Tal como se indica en el caso de *Pueblo* v. *Henneman*, 61 D.P.R. 189, 194, una parte indispensable es aquella que tiene tal interés en la cuestión envuelta en la controversia que no puede dictarse un decreto final entre las partes en la acción sin lesionar y afectar radicalmente su interés, o sin permitir que la controversia quede en tal estado que su determinación final haya de ser inconsistente con la equidad y una conciencia limpia. Véase 3 Moore's *Federal Practice* 2150, sección 19.07, 2da. ed.; *Chance* v. *Buxton*, 170 F.2d 187. En el caso de *Bank of California* v. *Superior Court*, 16 C. 2d 516, 106 P.2d 879, 883, se resuelve que una parte indispensable es aquella persona cuyos derechos e intereses podrían quedar destruídos o inevitablemente afectados por una sentencia dictada estando esa persona ausente del litigio. Se dice lo siguiente:

"Son típicas las situaciones (de partes indispensables) en las cuales un número de personas tienen intereses indeterminados en la misma propiedad .... y una de ellas trata, en una acción, el obtener la totalidad de la propiedad, el fijar su participación o el recobrar una porción reclamada por ella. Las otras personas con intereses similares son partes indispensables. La razón es que una sentencia en favor de uno que reclama parte de la propiedad o fondo necesariamente determinaría la cantidad o extensión disponible para los otros ..." Véanse además la monografía en 9 A.L.R. 2d 10, 70 y 2 Moore's *Federal Practice,* sección 19.08, 2da. ed.

En el caso de autos la reclamación de Domingo Osorio cubre la totalidad de los bienes hereditarios, de tener éxito

en su acción de filiación, y excluiría totalmente cualquier posible participación de Angelina Fuentes. De no tener éxito el demandante, Angelina Fuentes tendría derecho a la totalidad de la herencia. Los intereses de ambos son mutuamente exclusivos y antagónicos y, por lo tanto, Angelina Fuentes es una parte indispensable.

En Luisiana, por disposición estatutaria específica, si se tratase de la herencia de una madre natural, cuando no haya hijos legítimos, no se puede poner a hijos naturales en posesión de los bienes sin antes unir como partes en el procedimiento a otros parientes que hubieran heredado en ausencia de un hijo natural. *Taylor* v. *Allen*, 91 So. 635, 644. Esa disposición estatutaria coincide con la regla general en cuanto al status de tales parientes como partes indispensables.

■■ En su demanda original radicada en el tribunal de Humacao, Domingo Osorio debió haber incluído como única parte demandada a Angelina Fuentes. No lo hizo así, sino que formuló su demanda contra John Doe y Richard Roe como supuestos herederos desconocidos.[4] Existiendo Angelina Fuentes,[5] la demanda incoada contra personas ficticias era completamente inefectiva en derecho, era legalmente insuficiente y, por lo tanto, no podía tener eficacia para servir como interruptora del término prescriptivo en cuanto a la acción contra Angelina Fuentes. En términos generales, la presentación de una demanda contra personas inexistentes o ficticias o contra demandados erróneos ("wrong defendants") no interrumpe la prescripción de la acción en cuanto a una persona que debió haber sido hecha parte demandada

---

[4] La referencia a la Sucesión de Manuel Fuentes debe ser considerada como superflua ("surplusage"). Realmente, él no demandó a la sucesión como entidad abstracta, sino a ciertos herederos desconocidos.

[5] Desde el punto de vista de la equidad y de la conciencia limpia, factores relevantes en cuanto a la indispensabilidad de unir a una parte, conviene señalar que ha quedado establecido que Osorio conocía de la existencia de Angelina Fuentes.

originalmente, por ser una parte indispensable que existía al tiempo de radicarse la demanda original. (6)

Una demanda original radicada contra una persona inexistente o contra un demandado erróneo (en cuanto a su identidad y no meramente en cuanto a su nombre) o contra ninguna persona específica, no interrumpe la prescripción de la acción, cuando existe la persona que realmente debía haber sido demandada. 54 C.J.S. 317, 304; 8 A.L.R. 2d 118, 144, 148, 149, 150; *Chandler* v. *Dunlop*, 39 N.E.2d 969, 975; *Thompson* v. *Peck*, 181 Atl. 597, 598 y *Gates* v. *Wendling Nathan Co.*, (Cal.) 81 P.2d. 173, 177, en donde se establece la regla de que al no producirse una reclamación válida contra demandados ficticios, la demanda no interrumpe la prescripción. En dicho caso se dice, en parte, lo siguiente, a la página 177:

". . . aún no hemos leído un caso que resuelva que la prescripción se evada mediante la radicación de una demanda donde el demandado se designe con un nombre ficticio y la única alegación en cuanto a él es que el demandante ignora su verdadero nombre y que, cuando lo sepa, lo incluirá como demandado... Si ese procedimiento fuese a tolerarse, todas las leyes de prescripción debían derogarse ..."

Véanse, además, *Fitzpatrick* v. *Pitcairn*, 20 N.E.2d 280; *Schaffner* v. *B. & W. Auto Sales Co.*, 53 N.E.2d. 318 y *Goff* v. *Will County Nat. Bldg. Corporation*, 35 N.E.2d. 718, 719, en cuyo último caso se dice que la regla referente a la inclusión como demandada de la persona realmente interesada, pero con un nombre equivocado, no es aplicable cuando la parte realmente interesada no había sido hecha parte demandada en la reclamación original.

En el caso de *Davis* v. *Cohen Co.*, 268 U.S. 638, la Corte Suprema de los Estados Unidos resuelve que una acción erró-

---

(6) No está envuelta en este caso una situación bajo la cual la demanda original se entable contra una persona específica que es una parte adecuada y luego se une a otra parte que es indispensable. Esa cuestión podría resolverse a base de la relación que pueda existir entre ambas. En el caso de autos se trata de una demanda original incoada contra personas inexistentes o ficticias.

neamente incoada contra una compañía ferroviaria, cuando debía haber sido tramitada contra el Director General de Ferrocarriles, no interrumpe el término prescriptivo de la acción, y si después de terminar tal término, se radica una demanda enmendada contra tal director, la demanda enmendada debe ser desestimada.

Es cierto que en el caso de California de *Day* v. *Western Loan & Bldg. Co.*, 108 P.2d 702, se resuelve que una demanda original contra demandados ficticios interrumpe el término prescriptivo en cuanto a una demanda enmendada contra esos dos demandados con sus verdaderos nombres. Sin embargo, en ese caso estaba envuelto un accidente de automóviles. La demanda original se presentó contra James E. McWilliam, conductor del automóvil, quien, según creía el demandante, era el dueño del vehículo, pero el demandante incluyó también a "First Doe, Second Doe and Third Doe" como demandados, alegando el demandante que él no conocía sus verdaderos nombres, pero si surgía posteriormente que ellos, o uno de ellos, era el verdadero dueño del vehículo, el demandante los, o lo, incluiría con su verdadero nombre. En el caso de Day se incluyó originalmente a un demandado, McWilliams, contra quien se alegó una reclamación válida, estando Mc Williams relacionado con el verdadero dueño del vehículo. En el caso de autos no había reclamación original válida alguna contra ninguna persona específica. En el caso de Day el demandante identificó correctamente al dueño del carro, con excepción de su nombre, y el demandante ignoraba su verdadero nombre. En el caso de autos no se identificó originalmente a demandado o a heredero alguno y el demandante no ignoraba el nombre de la persona que debía haber sido hecha demandada. El caso de Day, por lo tanto, no es aplicable al de autos. Incidentalmente, en el caso de Day se aprueba, pero se distingue, el caso de *Gates* v. *Wendling Nathan Co.*, supra, y se señala que en el caso de Gates no se hizo esfuerzo alguno para alegar una causa de acción contra

cinco demandados ficticios, y luego se incluyeron otros demandados que eran independientemente responsables.

Lo que hemos expuesto en cuanto al caso de *Day* v. *Western Loan & Bldg. Co.*, supra, es aplicable al caso de *Maddux* v. *Gardner*, 192 S.W.2d 14, donde se resolvió que, a los fines de la prescripción, la demanda enmendada se retrotraía a la fecha de la demanda original. La demanda original se interpuso contra una compañía ferroviaria y contra el conductor y el fogonero de un ferrocarril, alegándose un accidente ferroviario. Estos últimos fueron designados como John Doe y Richard Roe, ya que el demandante conocía su identidad pero ignoraba sus nombres, que mencionó luego en la demanda enmendada. Originalmente se interpuso una reclamación válida contra un demandado específico y se trataba de un caso de ignorancia en cuanto a los nombres de los otros dos demandados. La situación es distinta a la del caso de autos. Si la demanda original es legalmente suficiente y se incluye a un demandado con un nombre ficticio ya que, conociéndose su identidad no se conoce su nombre específico, sería procedente el permitir una enmienda a la demanda cuando realmente se conozca el nombre de esa persona. Pero no debe ser aplicado ese principio cuando la enmienda en cuanto a tal demandado se formula después de haber transcurrido el período prescriptivo en un caso en que la demanda original es legalmente insuficiente por haber sido formulada contra demandados inexistentes sin incluirse como demandada a una parte indispensable o cuando no se trate meramente de ignorancia en cuanto al nombre de la parte demandada, conociéndose su identidad, y si se trata de un caso, como el de autos, en que el demandante conocía originalmente el nombre y la identidad de una persona que debía haber sido incluída como demandada por ser una parte indispensable.

La regla 19 (*c*) de nuestras Reglas de Enjuiciamiento Civil dispone lo siguiente:

"En cualquier alegación en que se solicite un remedio, la parte que alega deberá expresar los nombres, si los conociere, de las personas que debieran ser partes para poder conceder un remedio completo entre aquellas personas que figuran como partes y las cuales no se han unido, exponiendo las razones por las cuales fueron omitidas." (⁷)

En el caso de autos el demandante conocía la identidad y el nombre de Angelina Fuentes y, sin embargo, no la unió como parte demandada ni expuso las razones que justificasen su omisión. La regla 19 (c) es aplicable a partes necesarias o indispensables y el incumplimiento de esa regla debe dar lugar a la desestimación de la acción. *United States* v. *Aetna Life Ins. Co. of Hartford, Conn.*, 46 F. Supp 30, 6 Fed. Rules Serv. 19b.1, case 5; *County of Platte* v. *New Amsterdam Casualty Co.*, 9 Fed. Rules Serv. 19a.11, Case 1, y 3 Moore's *Federal Practice* 2210, 2da. ed. Bajo tal regla, la demanda original presentada en este caso era legalmente insuficiente.

■ El artículo 141 de nuestro Código de Enjuiciamiento Civil, que corresponde al 474 de California, dispone lo siguiente:

"Artículo 141.—Cuando el demandante ignore el nombre de un demandado, deberá hacer constar este hecho en la demanda, pudiendo designar a dicho demandado, en cualquier alegación o procedimiento con un nombre cualquiera, y al descubrirse el verdadero nombre, hará la enmienda correspondiente en la alegación o procedimiento."

Este artículo es aplicable a una situación en que un demandante conozca la identidad de una persona y no conozca su verdadero nombre. *Mercantile Trust Co.* v. *Stockton, etc. Co.*, 44 Cal. App. 558, 186 P. 1049 y *Bachman* v. *Cathry*, 113 Cal. 498. Para que un demandante pueda enmendar su demanda bajo el referido artículo 141, su ignorancia del verdadero nombre del demandado debe ser real

---

(⁷) Considerando el texto inglés de la regla 19 (c) de las federales, la frase "las cuales no se han unido" se refiere, naturalmente, a las personas que debieron ser partes.

y legítima, y no falsa o espúrea. *Mercantile Trust Co.* v. *Stockton, etc. Co.,* supra. Por lo tanto, dicho artículo 141 no es aplicable a las circunstancias de este caso. *Gates* v. *Wendling Nathan Co.,* supra.

En este caso se demandó a una sucesión compuesta de herederos desconocidos. Tal como ya se ha establecido por este Tribunal Supremo, una sucesión, como persona jurídica, no existe en nuestro derecho. Para que una sucesión pueda demandar y ser demandada, es necesario que se particularice e individualice expresando los nombres de los miembros que la componen. *Sucn. Belaval* v. *Acosta,* 64 D.P.R. 109; *Arvelo* v. *Banco Ter. y Agrí. de P. R.,* 25 D.P.R. 728; *Viera* v. *Sucn. Goitía,* 55 D.P.R. 299, 303 y *Sucn. Rodríguez* v. *Comisión Industrial,* 53 D.P.R. 825, 835. Cuando una demanda se dirige contra una sucesión deben darse los nombres de cada uno de los herederos o darse alguna razón para justificar la omisión de dicho requisito. *Dapena* v. *Sucn. Dominicci,* 12 D.P.R. 66. En el caso de autos no se ha dado razón alguna que justifique la omisión de Angelina Fuentes como demandada y, por el contrario, de los autos aparecen las razones por las cuales ella debe ser incluída como parte demandada.

En *Bithorn* v. *Santana,* 68 D.P.R. 300, se resolvió que para los fines de la prescripción, la fecha en que se demanda a un demandado se establece inexorablemente por la fecha en que se le incluye por primera vez como demandado. En ese caso se radicó, dentro del año de ocurrido un accidente, una demanda de daños y perjuicios contra la compañía aseguradora únicamente y después de haber transcurrido un año se radicó una demanda enmendada incluyendo por primera vez al asegurado como demandado y se resolvió que la demanda original contra la aseguradora no interrumpía el término prescriptivo en lo que se refería al asegurado. En el caso ante nos las circunstancias son más poderosas para justificar nuestra conclusión al efecto de que la acción de Domingo Osorio ha prescrito y no ha sido interrumpida por su

demanda original, ya que, en el caso de *Bithorn* v. *Santana*, supra, por lo menos se incluyó en la demanda originalmente a la compañía aseguradora como demandada mientras que en el caso de autos no se incluyó a persona específica alguna en la demanda original.

En *Vargas* v. *Alers*, 69 D.P.R. 231, se resuelve que, a los fines de la prescripción, una demanda enmendada debe retrotraerse a la fecha de la demanda original si ambas demandas surgen de y envuelven la misma conducta, transacción o evento. Regla 15(c) de nuestras Reglas de Enjuiciamiento Civil. En ese caso el padre demandó dentro del año estatutario por la muerte de su hijo y después de transcurrido el año se enmendó la demanda para incluir en la misma a la madre como demandante. Se resuelve que la demanda enmendada no había prescrito ya que se trataba de la misma conducta, transacción o evento. Ese caso de *Vargas* v. *Alers* no envolvía la omisión en la demanda original de una parte indispensable y no se trataba, como ocurre en el caso de autos, de una reclamación entablada contra partes inexistentes o ficticias. Por lo tanto, dicho caso de *Vargas* v. *Alers*, supra, no es aplicable a las circunstancias del caso de autos. También somos de opinión que el criterio establecido en la referida regla 15(c) al efecto de permitir enmiendas a una demanda que se retrotraen a la fecha de la demanda original si ambas envuelven la misma conducta, transacción o evento, no es aplicable a un caso en que la demanda original es fatalmente defectuosa por ser entablada contra demandados ficticios cuando al tiempo de la radicación de la demanda original existía una parte indispensable cuya identidad y nombre eran conocidos por el demandante.

Estamos concientes del hecho de que ·nuestra decisión en este caso al efecto de que la reclamación de Domingo Osorio ha prescrito, y que su demanda original no sirvió de interrupción eficaz al período estatutario de prescripción, priva al demandante en el caso de autos de su oportunidad para demostrar su status como hijo natural. Sin embargo, él debe

sufrir y asumir las consecuencias de sus propias actuaciones al no incluir a Angelina Fuentes como parte demandada en la demanda original. Podría ser indeseable el mutilar las oportunidades de presuntos hijos naturales para establecer sus derechos en corte. Sin embargo, estamos bajo el deber de mantener la integridad de la ley. El resolver que un demandante puede establecer una reclamación contra demandados ficticios, conociendo él la identidad y el nombre de una parte indispensable en el litigio, privando así a esa parte indispensable de la oportunidad de oponerse a las pretensiones del demandante, equivaldría a establecer un precedente judicial peligroso e injusto que tendería no solamente a privar a las personas realmente interesadas de su oportunidad para comparecer en el juicio sino que también tendería a destruir la estabilidad de las leyes de prescripción.

Habiendo resuelto que ha prescrito la reclamación de Domingo Osorio contra Angelina Fuentes llegamos a la conclusión de que el tribunal inferior actuó erróneamente al declarar sin lugar la moción de sentencia sumaria presentada por dicha demandada.

*Debe anularse la resolución recurrida y en su consecuencia debe dictarse una sentencia sumaria desestimando definitivamente la demanda enmendada radicada en este caso.*

El Juez Presidente Señor Todd, Jr., no intervino.

El Juez Asociado Señor Pérez Pimentel se inhibió.